746 So.2d 698 (1999)
STATE of Louisiana
v.
Milton JACKSON.
No. 99-KA-401.
Court of Appeal of Louisiana, Fifth Circuit.
October 13, 1999.
*699 J. Rodney Baum, Louisiana Appellate Project, Baton Rouge, Louisiana, for appellant Milton Jackson.
Paul D. Connick, Jr., District Attorney, 24th Judicial District Court, Rebecca J. Becker, Marie D. Butler, Assistant District Attorneys, Gretna, Louisiana, for appellee State of Louisiana.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and THOMAS F. DALEY.
CANNELLA, J.
Defendant, Milton Jackson, appeals his conviction of aggravated rape and sentence. We affirm both.
Defendant was charged on June 13, 1996 with aggravated rape of Darlene Lewis (the victim), a violation of La.R.S. 14:42. He filed discovery motions and motions to suppress the confession, identification and evidence. The discovery motions were satisfied on August 12, 1996 and the motion to suppress the confession was denied on April 23, 1998. Before trial, the State notified the defendant of its intention to *700 introduce statements made by the defendant. Trial was held on May 26, 27, 28, 1998, following which, defendant was found guilty as charged by a twelve person jury.
On July 10, 1998, the trial judge denied the defendant's motion for new trial and sentenced the defendant to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence, as required by La.R.S. 14:42.
The testimony at trial established that the victim met and became friends with the defendant in April of 1996. They were not involved sexually. She testified that on May 20, 1996, defendant raped and beat her. She stated that at approximately 1:00 p.m. on that day, defendant picked her up at her father's house and, eventually, they went to the defendant's residence in Marrero. When they entered the house, the defendant locked the door with a key. The victim and the defendant then went into the bedroom where they normally watched television. She said the defendant brought her some wine and that she drank a small amount of it. Defendant then went into the living room and sat on the sofa to smoke a cigarette, while the victim stood in the doorway between the two rooms. During the course of their conversation, defendant remarked that she liked to be in control.
The victim testified that the defendant said that he wanted to talk, so she returned to the bedroom with him. However, when she sat on the bed, the defendant shoved her back on the bed and lay on top of her. The victim testified that she asked him to get off of her, but he refused, saying that it was "his turn to be in control." She tried to push him away, but he pinned her arms over her head. She stated that defendant threatened to kill her and throw her body in the Mississippi River. He punched her in the chest. He then ordered her to remove her pantyhose. When she hesitated, defendant hit her with his fists and his belt. When she still refused to comply, defendant struck her arms, legs, and stomach with his belt buckle. Ultimately, the victim obeyed the defendant. After she removed her undergarments, defendant put on a condom, held her down and had sexual intercourse with her.
After it was over, the defendant brought the victim home. Remembering the defendant's threats, she worried about reporting the incident. The victim decided to telephone her sister, who, in turn, called their father and the police. Shortly thereafter, the victim's father arrived. He brought her to his home. Both he and the victim's sister testified that the victim was crying hysterically.
Detective Terry Graffeo of the Jefferson Parish Sheriff's Office, the first officer to respond to the telephone call, testified that he observed bruises and welts on the victim's arms. He identified State's Exhibits 1 through 5 as photographs of these injuries. He testified that the victim was taken to Lakeside Hospital where a rape examination was performed by Dr. Neil Wolfson.
Dr. Wolfson testified that the victim had bruises and abrasions on her arms, shoulders and chest that were consistent with being struck by a belt and buckle. He stated that she also had bruises on her thigh, which were consistent with fingermarks, as if her thighs had been pinned down or pried apart. According to Dr. Wolfson, the results of the physical examination were consistent with the victim's claim that she was beaten and raped.
Detective Michael Carrone and Lieutenant Antoinette Ulmer of the Jefferson Parish Sheriffs Office Personal Violence Unit were also involved in the investigation. Detective Carrone prepared a photographic line-up and the victim positively identified defendant from the line-up. Detective Carrone testified that he and other officers executed a search warrant at defendant's residence where they discovered that the bed had been stripped and the linens placed in the washing machine.
*701 The next day, defendant arrived at the police station and gave an audio-recorded statement. Both Detective Carrone and Lieutenant Ulmer testified that defendant was advised of his Miranda[1] rights, waived those rights, and freely and voluntarily gave a statement. This tape was admitted into evidence and was played for the jury. Defendant told the officers that he had been with his girlfriend, Lynette Lewis,[2] the night of the alleged rape. He admitted that he knew the victim, but stated that he never had sex with her and denied that he raped her. Lieutenant Ulmer testified that Lynette Lewis did not corroborate the defendant's alibi and defendant was arrested.
Defendant gave a second recorded statement after his arrest, which was also played for the jury. In this statement, he said that he remembered holding the victim down and trying to kiss her, but did not recall having sexual intercourse with her. Defendant also admitted to the police that he beat the victim. He said the blood on the bed probably resulted from the wounds he had inflicted. Defendant further commented in the statement that he realized he had done something wrong and that he attempted to cover it up by washing the sheets.
According to defendant's father, approximately a month after his arrest, defendant called the victim's father and asked him to convey an apology to the victim. The victim got hysterical when she learned this. Additionally, the victim observed defendant bring roses and a poem to her place of employment. The card with the flowers had a pre-printed heading, "With Deepest Sympathy" and was signed, "Hope you're feeling better. Call me soon, please." In the poem, defendant apologized for hurting her and wrote that he had prayed that God would touch her heart to set him free. She also found a note taped to the door of her home. The note taped to the door was signed, "Your friend," and also contained an apology.
Bonnie DuBourg, an expert serologist, tested evidence collected from the victim and defendant. DuBourg testified that blood consistent with the victims' blood type was found on the victim's dress. She also said that human blood was detected on the victim's pantyhose and panties, as well as in the vaginal swab that had been performed on the victim at the hospital. DuBourg stated that she did not detect any seminal fluid on any of the samples, including defendant's clothing and the linens. However, she testified that her findings were consistent with the suspect wearing a condom, assuming that it had not ruptured.
At trial, defendant testified, denying that he raped the victim. He said that he was seeing several women in May of 1996, including his regular girlfriend, Lynette Lewis. According to defendant, he was at Lynette Lewis' house on the night of May 20, 1996. About 10:30 p.m., he left to give the victim a ride home from her father's house. Defendant claimed that, once they arrived at the victim's house, she changed her mind and decided to go for a ride in his car. They drove for a while and he stopped by the side of the road to relieve himself. When he returned, the victim was out of the car, and according to defendant, they hugged and kissed for a while. He said that on the way to his house, they stopped at a K & B drugstore for condoms and some wine. When he and the victim arrived at his house, they went to the bedroom, watched television and kissed. According to defendant, they removed their clothes and had consensual sexual intercourse.
Defendant claimed that the victim's injuries were sustained during the consensual encounter after she urged him to become more physical with her. He further contended that the victim did not refuse to *702 have sexual intercourse that night. According to defendant, the victim only became upset when she saw a photograph of Lynette Lewis in his bedroom and after he told her that Lynette was his girlfriend. Defendant further testified that, while he was in the habit of lying and cheating on women, he did not rape women. Defendant acknowledged that he had made two statements to the police. He testified that he gave the first statement to police to protect himself and said that the police told him what to say in his second statement.
The defendant also presented the testimony of his family and the victim's ex-husband. Defendant's father and brother both testified that they accompanied defendant to the Sheriff's Office. They both advised him against talking to the police, but defendant insisted that he wanted to tell the truth.
Defendant's mother, Mildred Jackson, testified that he had been dating Lynette Lewis for the past four or five years. However, she had not seen Lynette in the past year. Mildred Jackson testified that she telephoned the victim to apologize after her son was arrested and was told by the victim that she had found out for the first time that night that the defendant was seeing another woman.
The victim's former husband, Julius Lewis, testified that she was a "good actress" and that she had frequently placed herself in "precarious" positions with men. His opinion was that the victim had engaged in a consensual encounter with defendant. He testified, however, that the victim had never asked him to treat her "roughly."

ANDERS APPEAL
On appeal, defendant's appellate counsel filed an "Anders" brief, asserting that, after a detailed review of the record, counsel could not find any ruling of the trial court or non-frivolous issues to raise on appeal.[3] Counsel's attachments show that he forwarded to defendant a copy of the brief which he filed with this Court and that he informed defendant that he could file a pro se supplemental brief. Included in the brief was a request to withdraw, pursuant to Anders. However, he also assigned as error the trial judge's failure to observe the twenty-four hour delay between denial of the new trial motion and sentencing, discussed infra. This Court also sent defendant a letter notifying him of his right to file a brief by June 17, 1999.
Defendant's appellate counsel complied with the procedure approved by the United States Supreme Court in Anders, adopted in State v. Bradford, 95-929 (La. App. 5th Cir.6/25/96), 676 So.2d 1108 and State v. Benjamin, 573 So.2d 528 (La.App. 4th Cir .1990). However, defendant subsequently filed three motions on May 20, 1999. In one of these motions, defendant requests that this Court allow him to file a supplemental brief and/or to permit him to enroll as co-counsel. As noted above, this Court has already informed defendant by letter of his right to file a supplemental brief. In another motion, defendant states that his appointed appellate counsel has withdrawn and requests this Court to appoint counsel to represent him on appeal. Defendant is represented by counsel. His appellate counsel has not yet withdrawn, since this Court has not granted the motion to withdraw. In defendant's third motion, he complains that the appellate record is incomplete and inaccurate, that the assignments of error have been removed from the record, that the victim's testimony is fictitious and did not take place as recorded in the transcript and that three of defense counsel's objections during the victim's testimony are not included in the record. Defendant also claims that statements by defense during cross-examination of the State's witness, Detective Carrone, pertaining to an illegal search warrant, were removed from the *703 record. Defendant requests this Court to order the trial court to submit all minutes, recordings and written notes to properly correct "this fatally defective" transcript.
As a result of defendant's requests, on June 10, 1999 appellate counsel filed a motion to interrupt briefing delays and sought to remand the record to the district court for supplementation and correction. Appellate counsel asserts that defendant asked that he file this motion so that the transcript may be verified against the trial tapes.
First, we find that the record contains objections by defense counsel during direct examination of the victim. (R., pp. 673-674). Additionally, the record reflects that defense counsel cross-examined Detective Carrone at length about the search warrant. (R., pp. 560-582, 599-607, 730-733). Thus, we find no merit to these allegations.
Second, we denied the motions, but with the proviso that the court reporter allow defense counsel an opportunity to compare the tapes of the trial to the transcript and for defense counsel to notify this Court if discrepancies exist. The investigation revealed no irregularities in the transcript. In addition, we ordered the Clerk of Court to determine whether the assignments of error were flied in the trial court and, if so, to supplement the appeal record. The Clerk of Court informed us that no assignments of error were filed.
Because of the possibility of problems with the transcript, defendant did not file his pro se brief within the time allotted. Once the investigation was complete, we notified him to file the brief, if he intended to do so, within seven days thereof, a reasonable time under these facts. Defendant did not file a pro se brief.
Turning now to the Anders analysis, in State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241, the Supreme Court revisited the Anders procedure outlined in State v. Benjamin, 573 So.2d 528 (La.App. 4 Cir.1990). The Jyles court stated that "the brief filed by counsel must review not only the procedural history of the case and the evidence presented at trial but must also provide ... a detailed and reviewable assessment for both the defendant and the appellate court of whether the appeal is worth pursuing in the first place." See also State v. Mouton, 95-0981 (La.4/28/95), 653 So.2d 1176.
In this case, appellate counsel states that he has forwarded to defendant a copy of the brief which he filed with this court. Appellate counsel has asserted that, after reviewing the sufficiency of the evidence and the trial proceedings, there are no non-frivolous issues to support an appeal. Appellate counsel notes that the record reveals that defendant filed motions to suppress and that, while the motion to suppress confession was denied, the record does not reflect a ruling on the remaining motions to suppress. However, defendant waived the motions because defense counsel stated before trial that there were no open motions. In addition, motions pending at commencement of trial are waived when the defendant proceeds to trial without raising as an issue the fact that the motions were not ruled upon. State v. Williams, 97-1135, p. 12 (La.App. 5th Cir.5/27/98), 714 So.2d 258, 264; State v. Scamardo, 97-197, p. 4 (La.App. 5th Cir.2/11/98), 708 So.2d 1126, 1129, writ denied, 98-672 (La.7/2/98), 724 So.2d 204; State v.. Price, 96-680 (La.App. 5th Cir.2/25/97), 690 So.2d 191, 196.
Appellate counsel assigns as patent error the trial judge's failure to observe the twenty-four hour period between denial of defendant's motion for new trial and sentencing, as required by La.C .Cr.P. art. 873. The record reveals that defendant did not waive that delay. Nevertheless, this error is harmless.
La.C.Cr.P. art. 873 provides as follows:
If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until *704 at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
Absent a showing that prejudice resulted from the failure to afford the statutory delay, reversal of a prematurely imposed sentence is not required. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, 380, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); State v. Williams, 97-970, (La.App. 5th Cir.1/27/98), 708 So.2d 1086, 1089. In Seals, the Louisiana Supreme Court held that the trial judge's failure to observe the twenty-four hour delay was not reversible error because the judge was required to impose the death penalty after defendant was convicted of first-degree murder and the jury voted to impose the death penalty. The Seals court stated that defendant could not show prejudice because delay or no delay, the defendant would have received the same sentence of death. State v. Seals, 684 So.2d at 380.
For the same reasons expressed in Seals, this Court in State v. Williams, held that the trial judge's failure to observe the twenty-four hour delay was not reversible error. This Court concluded that the defendant was not prejudiced because, regardless of any delay, the trial judge had to impose a mandatory sentence of life imprisonment on defendant's distribution of heroin conviction.
In this case, defendant was convicted of aggravated rape, which is punishable by a mandatory sentence of life imprisonment at hard labor. Therefore, the failure to delay sentencing in this case was harmless error. Furthermore, although appellate counsel has assigned this issue as error, this is not a non-frivolous issue that would arguably support an appeal.
In addition, this Court has conducted an independent review to determine whether the appeal is frivolous. The examination of the record in the instant case consisted of (1) a review of the bill of information to ensure that defendant was properly charged, (2) a review of all minute entries to ensure that defendant was present at all crucial stages of the proceedings and that the conviction and sentence are legal, (3) a review of all the pleadings in the record and (4) a review of all the transcripts to determine if any ruling provides an arguable basis for appeal. See: State v. Bradford, 95-929 (La.App. 5th Cir.6/25/96), 676 So.2d 1108, 1110-1111. We find no other non-frivolous appealable issues.
In addition we have reviewed the record for patent errors according to La.C.Cr.P. art. 920. There are no other patent errors in this case. Therefore, counsel has complied with Anders, is entitled to withdraw from the case and we grant his motion to withdraw.
Accordingly, defendant's conviction and sentence are hereby affirmed.
AFFIRMED.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Lynette Lewis and Darlene Lewis are not related.
[3] Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), reh. denied, 388 U.S. 924, 87 S.Ct. 2094, 18 L.Ed.2d 1377 (1967).