772 So.2d 740 (2000)
STATE of Louisiana
v.
Curtis KEATING.
No. 00-KA-51.
Court of Appeal of Louisiana, Fifth Circuit.
October 18, 2000.
*741 John M. Crum, Jr., District Attorney, Rodney A. Brignac, Assistant D.A., Edgard, LA, for Plaintiff-Appellee.
Patrick C. McGinity, Gretna, LA, Christopher A. Aberle, Mandeville, LA, for Defendant-Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., JAMES L. CANNELLA and JAMES C. GULOTTA, Judge Pro Tem.
DUFRESNE, Judge.
The defendant, Curtis Keating, challenges his conviction and sentence for second degree murder. For the reasons set forth herein, we affirm but remand the matter with instructions.
On October 24, 1995, the St. John the Baptist Parish Grand Jury returned an indictment charging the defendant with the second degree murder of Wade Lennix, LSA-R.S. 14:30.1. At the arraignment, the defendant entered a plea of not guilty and not guilty by reason of insanity. The matter proceeded to trial before a twelve person jury in October of 1997. However, the trial court declared a mistrial when the jury was unable to reach a verdict. In October of 1997, the matter again proceeded to trial. At the conclusion of these proceedings, the twelve person jury found the defendant guilty of second degree murder.
*742 Following his conviction, the defendant filed a motion for new trial and motion in arrest of judgment. The trial court denied these motions and thereafter sentenced the defendant to the mandatory term of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. It is from this conviction and sentence that the defendant now appeals.

FACTS
It is undisputed that on October 1, 1995, the defendant shot and killed Wade Lennix. After the shooting, the defendant gave a videotaped statement to the St. John the Baptist Parish police officers regarding the details of the offense. In this statement which was played for the jury, the defendant stated that on the morning of October 1, 1995, he decided to kill Wade Lennix because Mr. Lennix had severely injured one of his friends and in addition, consistently harassed him and his family to the point that they were scared of him. The defendant went to the house of a friend, Lionel Jacob, and the two men got into Jacob's car. They proceeded to the defendant's house, and the defendant obtained a shotgun which he loaded and placed in the trunk of the car. The defendant then tried to buy some marijuana to lure Mr. Lennix into the car; however, he could not find any and bought some vodka instead. He found Mr. Lennix and lured him into the car by offering him something to drink. As they were driving down Peavine Road in LaPlace, the defendant told his friend to stop the car. At that time, the defendant exited the car, went to the trunk, took out the shotgun, pointed it at Mr. Lennix, and ordered him out of the car. When Mr. Lennix refused, the defendant shot him two times in the chest and killed him. The defendant then dragged the body out of the car and left it on the side of the road. The two men subsequently went to a car wash to try to clean the blood out of the car. In his statement, the defendant admitted that he meant to kill Mr. Lennix and that he would do it again. In contrast to that particular testimony, the defendant testified at trial that he never intended to kill anyone. At trial, the defendant further testified that on the day of the killing, he had taken his prescription drugs and had been drinking alcohol.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assigned error, the defendant complains about the trial court's denial of his motion to quash. On September 24, 1999, the defendant filed a motion to quash the prosecution pursuant to LSA-C.Cr.P. art. 578, alleging that "more than one (1) year has elapsed between the institution of prosecution and the trial of the above captioned matter." Following a hearing, the trial judge denied this motion on the basis that the defendant had specifically waived the time limitations for trial set forth in LSA-C.Cr.P. arts. 578-573.
LSA-C.Cr.P. art. 582 sets forth the time limitations for the commencement of trial when a mistrial is ordered. That provision reads as follows:
When a defendant obtains a new trial or there is a mistrial, the state must commence the second trial within one year from the date the new trial is granted, or the mistrial is ordered, or within the period established by Article 578, whichever is longer.
LSA-C.Cr.P. art. 578 provides that, in non-capital felony cases, no trial shall be commenced after two years from the date of the institution of the prosecution.
In the present case, the prosecution was instituted on October 24, 1995, by the filing of the grand jury indictment. The matter proceeded to trial in October of 1997; however, the judge declared a mistrial on October 7, 1997, when the jury was unable to reach a verdict. Therefore, according to the provisions of LSA-C.Cr.P. art. 582, the state had until October of 1998 to bring the defendant to trial. The second trial was originally set for February 2, 1998. However, the defendant filed several motions *743 for continuances. In the motion filed on August 17, 1998, the defendant alleged the following:
Co-counsel, Daniel J. Markey, Jr., Esquire, was stricken with a cerebral hemorrhage on January 11, 1998 and will be unable to participate as counsel for Mr. Keating on the presently set trial date of September 8, 1998. His medical progress and prognosis indicates that he will be able to participate and represent Mr. Keating in the near future.
Mr. Keating requests this continuance in order that he may have legal counsel of his choosing pursuant to the 6th Amendment of the United States Constitution and thereby maintain his rights to due process of law. In order to exercise these rights and in the interest of justice, Mr. Keating hereby waives his right to a speedy trial and his rights pursuant to Articles 578-583 of the Code of Criminal Procedure.
The trial judge signed the motion for continuance. At that time, a new trial date was not set, but rather the trial judge wrote the following on the motion, "To be reset via telephone conference initiated by mover." There is no indication in this record that the defendant ever attempted to reset the matter. Thereafter, in September of 1999, the state filed a motion to set the matter for trial. At that time, the trial date was set for October 5, 1999. On that date, the trial judge denied the defendant's motion to quash, and the matter thereafter proceeded to trial.
Given these circumstances, we find that the defendant, in fact, waived the time limitations for bringing the matter to trial, as set forth in LSA-C.Cr.P. art. 582. Accordingly, we find that the trial judge acted properly in denying the defendant's motion to quash. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In his second assigned error, the defendant challenges the sufficiency of the evidence used to convict him. He argues that he proved by a preponderance of the evidence that the shooting was directly caused by involuntary intoxication and thus, the jury was obligated as a matter of law to find him not guilty under that theory. He specifically asserts that he shot Wade Lennix as a direct result of a mental condition occasioned by the adverse reaction of mixing prescription drugs with alcohol.[1]
The standard for reviewing the sufficiency of evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court must determine whether, viewing the evidence, direct and circumstantial, in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.
To prove second degree murder, the state must show the killing of a human being and that the defendant had the specific intent to kill or inflict great bodily harm. LSA-R.S. 14:30.1. Specific intent is a state of mind and as such need not be proven as a fact, but may be inferred from the circumstances and actions of the accused. The intent to kill or to inflict great bodily may be inferred from the extent and severity of the victim's injuries. State v. Graves, 99-113 (La.App. 5 Cir. 8/31/99), 740 So.2d 814, writ denied, 99-3013 (La.3/31/00)759 So.2d 68.
LSA-R.S. 14:15 provides as follows:
The fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial, except as follows:
(1) Where the production of the intoxicated or drugged condition has been involuntary, *744 and the circumstances indicate this condition is the direct cause of the commission of the crime, the offender is exempt from criminal responsibility.
(2) Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime.
Involuntary intoxication is a defense if the condition is the direct cause of the commission of the crime. State v. Rives, 407 So.2d 1195 (La.1981); State v. Foster, 26,143 (La.App. 2 Cir. 12/9/94), 647 So.2d 1224. The reporter's comment to LSA-R.S. 14:15 mentions that involuntary intoxication could possibly result from the combined use of alcohol and medications. Intoxication is in the nature of an affirmative defense to a criminal charge and the burden is upon the defendant to prove, by a preponderance of the evidence, that he was in fact intoxicated at the time of the offense. State v. Leeming, 612 So.2d 308 (La.App. 5 Cir.1992), writ denied, 616 So.2d 681 (La.1993); State v. Patterson, 99-994 (La.App. 5 Cir. 1/25/00), 752 So.2d 280.
In the present case, using the standard of review set forth in Jackson v. Virginia, we find that the state proved beyond a reasonable doubt that the defendant killed Mr. Lennix and that he had the specific intent to do so. The state introduced the videotaped statement of the defendant in which he admitted the killing. In the statement, the defendant also admitted that he meant to kill Mr. Lennix and that he would do it again.
We will now turn our attention to whether the defendant proved by a preponderance of the evidence his involuntary intoxication at the time of the offense. At trial, the defense called Dr. Christy Montegut, the defendant's physician from 1983-1995. He testified that during that time frame, he treated the defendant for chronic anxiety as well as some physical ailments related to the defendant's alcohol abuse problems. He further testified that the defendant had been twice committed to a psychiatric facility due to substance abuse. Up until the time of the incident, Dr. Montegut had prescribed to the defendant Valium for anxiety and Tylenol with codeine for chronic back pain, both to be taken three times a day. On occasion, the doctor would also prescribe Zoloft for depression. The last time Dr. Montegut saw the defendant was on September 11, 1995, at which time he renewed his prescriptions for Valium and Tylenol.
Dr. Maria Palazzo, an expert in general and forensic psychiatry, testified that she treated the defendant on several occasions beginning in May of 1993, when he showed up at the hospital emergency room for detoxification. She diagnosed the defendant as having alcohol dependence, episodic explosive disorder, depression, and very poor impulse control even when sober. When asked what effect a drug like Valium would have on an individual like the defendant, she testified that it would make his impulse control poorer and would disinhibit his ability to concentrate. According to Dr. Palazzo, with the combination of the Valium, Tylenol and alcohol, the defendant "was walking around half loaded most of the time." The doctor further testified that the defendant viewed the victim as a real threat and meant to stop him from harming his family; however, with the combination of the medicine and alcohol, he did not have the ability to formulate a plan with good judgment to deal with the situation. During the course of her testimony, Dr. Palazzo acknowledged that on the morning of the incident, the defendant could distinguish right from wrong, and further, that the defendant had the ability to make a plan, although it might not have been a good one.
The defense also called Dr. Lonald Daughtry, an expert in the fields of pharmacology and psychopharmacology, who *745 testified that mixing Valium, Tylenol with codeine, and alcohol can cause rage reaction, paranoid ideations, and an almost total loss of inhibition. He testified that prescribing Valium to a substance abuser could cause the person to "commit all types of heinous crimes." According to Dr. Daughtry, anyone who regularly takes Valium and Tylenol, with alcohol, would have severely compromised brain function which would affect his judgment and ability to process thoughts logically.
The defense further presented the testimony of Dr. Richard Richoux, who had testified as an expert on behalf of the state. Dr. Richoux testified, in accordance with the report that he had prepared, that the defendant was severely disinhibited and compromised in impulse control at the time of the offense as a direct result of intoxication. He agreed that a person can have intent, but that he would explode faster if he had severely compromised impulse control and severe disinhibition. He maintained his position, however, that a person such as the defendant knows right from wrong.
In addition to this testimony, Lionel Jacob, a state witness, testified on cross-examination that on the morning of the incident, the defendant looked a little crazy, and further that he had not seen him like that in the past.
In contrast to this testimony, the state presented evidence that the defendant was not intoxicated at the time of the offense and that he knew exactly what he was doing. Detective Sergeant Andy Breaux testified that shortly after the shooting, he approached the defendant and advised him that he was needed at the detective bureau for questioning. The officer testified that the defendant appeared alert, his speech was coherent, and his walk was normal.
Detective Carl Baker, who interviewed the defendant at the detective bureau on the day of the incident, testified that defendant appeared to be alert although "obviously, anxious." The defendant appeared to understand what the officer was telling him, and he answered the questions in a timely fashion. According to the officer, although there was a "very, very faint" odor of alcohol that he detected in the interview room, the defendant did not appear to be under the influence of drugs or alcohol. The defendant's speech was clear and coherent, he was able to maintain his balance, his movements were very fluid and normal, and he appeared to be in control of his faculties.
Major Robert Hay, who also participated in the interview process, testified that the defendant appeared to be functioning normally and appeared to be in control of his actions. The defendant spoke clearly and also seemed to understand what the officers were telling him. He admitted that in the initial stages of the interview process, he detected a very faint odor of alcohol in the interview room.
The state also called Dr. Richard Richoux, an expert in the field of forensic psychiatry. Based on the documentary materials reviewed and his psychiatric examination of the defendant, Dr. Richoux concluded that the defendant was able to distinguish right from wrong at the time of the offense. It was his opinion that the defendant was able to entertain an intent to kill on October 1, 1995. While defendant suffers some problems, such as depression, substance abuse, and explosive personality, he does not suffer from any of the kinds of psychiatric disorders that would hinder a person's ability to form intent or to tell right from wrong.
In the present case, the jury was faced with conflicting testimony and obviously chose to believe the evidence that indicated that the killing was not the direct result of the defendant's involuntary intoxication. It is not the function of a reviewing court on appeal of a criminal conviction to evaluate the credibility of witnesses to overturn a trial court on its factual determination of guilt. When the trier-of-fact is confronted by conflicting *746 testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. State v. Hopson, 98-943 (La.App. 5 Cir. 3/30/99), 735 So.2d 81.
In the present case, a reasonable factfinder could easily have concluded that the defendant failed to prove, by a preponderance of the evidence, his involuntary intoxication at the time of the offense. Accordingly, the issues raised by the defendant in this assigned error are without merit.

ASSIGNMENT OF ERROR NUMBER THREE
In his third assigned error, the defendant contends that the trial court violated his right to fully present a defense when it refused to allow him to put on evidence of the victim's criminal convictions.
During cross-examination of one of the police officers, the defense referred to certified copies of the victim's convictions. The state objected to the introduction of the records arguing that there was no evidence of any hostile act by the victim at the time of the offense so as to warrant the introduction of his criminal record. The defense argued that the convictions corroborated the defendant's awareness of the victim's violent propensities, and were thus relevant to the defendant's state of mind and his fear of the victim. The trial judge agreed with the state's argument and refused to allow the introduction of the victim's criminal record. We find no error in the trial court's ruling.
LSA-C.E. art. 404 provides, in pertinent part:
A. Character evidence generally. Evidence of a person's character or a trait of his character, such as a moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
* * * * * *
(2) Character of victim. (a) Except as provided in Article 412, evidence of a pertinent trait of character, such as a moral quality, of the victim of the crime offered by an accused, or by the prosecution to rebut the character evidence; provided that in the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of his dangerous character is not admissible;...
* * * * * *
B. Other crimes, wrongs, or acts.
* * * * * *
(2) In the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of the victim's prior threats against the accused or the accused's state of mind as to the victim's dangerous character is not admissible;
. . .
Evidence of a victim's dangerous character is admissible only if the accused first produces evidence that at the time of the incident, the victim made a hostile demonstration or committed an overt act against the accused of such character that would have created, in the mind of a reasonable person, the fear that he was in immediate danger of losing his life or suffering great bodily harm. State v. Young, 99-1054 (La.App. 5 Cir. 2/16/00), 757 So.2d 797.
In the present case, there was absolutely no evidence produced that the victim made a hostile demonstration or committed an overt act against the defendant at the time of the incident. Thus, we find that the trial court did not err in refusing to allow evidence of the victim's prior convictions. Moreover, even assuming that the trial judge erred in excluding the objectedto evidence, we find that the defendant was not prejudiced by the ruling. While the trial judge did not allow the court records, the jury heard testimony *747 throughout the course of the trial regarding the victim's violent propensities as well as his criminal record. Accordingly, this assigned error is likewise without merit.

ERROR PATENT DISCUSSION
We have also conducted a review for errors patent in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). Such a review reveals that the trial judge failed to advise the defendant of the prescriptive period for post-conviction relief. LSA-C.Cr.P. art. 930.8 provides that a defendant has two years after his judgment of conviction and sentence becomes final within which to apply for post conviction relief. Subpart C of the article requires that the trial court inform the defendant of the prescriptive period at the time of sentencing. Thus, the trial judge is ordered to inform the defendant of the provisions of this article by sending written notice to him within ten days of this opinion and to file written proof that the defendant received such notice.
Our review further reveals that the trial judge failed to observe the twenty-four hour delay required between the denial of a motion for new trial and the imposition of sentence, as required by LSA-C.Cr.P. art. 873. Absent a showing that prejudice resulted from the failure to afford the statutory delay, reversal of a prematurely imposed sentence is not required. State v. Jackson, 99-401 (La.App. 5 Cir. 10/13/99), 746 So.2d 698. In the present case, we find that the defendant was not prejudiced by the failure to observe the delay because the trial judge was required to impose a mandatory sentence of life imprisonment on the defendant's conviction of second degree murder. Thus, the failure to delay sentencing in this case can be deemed harmless. In accord, see State v. Jackson, supra.
For the reasons set forth herein, the defendant's conviction and sentence are hereby affirmed and the case is remanded for further action in accordance with this opinion.
AFFIRMED AND REMANDED.
NOTES
[1] The thrust of the defendant's argument is that proof negating specific intent is unnecessary since he has proven involuntary intoxication as a defense, which, unlike voluntary intoxication, does not require negating specific intent.