822 So.2d 823 (2002)
STATE of Louisiana
v.
Christopher K. PERCY.
No. 02-KA-255.
Court of Appeal of Louisiana, Fifth Circuit.
June 26, 2002.
*824 Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Terry M. Boudreaux, Donald A. Rowan, Assistant District Attorneys, Gretna, LA, for Appellee.
Bruce G. Whittaker, New Orleans, LA, for Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS and SUSAN M. CHEHARDY.
MARION F. EDWARDS, Judge.
The defendant, Christopher Percy, appeals his conviction of attempted first degree murder in violation of LSA-R.S. 14:27 and LSA-R.S. 14:30. In addition to the attempted murder charge, Percy was also charged in the same bill of information with theft of goods valued at between $100.00 and $500.00, in violation of LSA-R.S. 14:67.10. Percy was arraigned and entered a plea of not guilty. The defense filed motions to suppress Percy's statement, identification, and evidence, all of which motions were denied by the trial court.
Following a jury trial, Percy was found guilty of attempted first degree murder. He was not tried on the two theft charges, which were later dismissed. Percy was sentenced to 15 years of imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The State filed a multiple bill of information, alleging that Percy was a second felony offender, having pled guilty to theft on February 11, 1998 in Division "A" of the Criminal District Court of Orleans Parish. After the multiple offender hearing on May 26, 2000, Percy was adjudicated to be a second felony offender. The trial court vacated the 15-year sentence imposed for the attempted first degree murder conviction and sentenced Percy on the multiple bill to 25 years of imprisonment at hard labor. The trial court granted Percy's motion for appeal.
Detective Donald Clogher, a detective with the Homicide Section of the Jefferson Parish Sheriff's Office (JPSO), testified at trial. Clogher stated that, at the time of the incident, he was a deputy with the JPSO and was assigned to the East Bank Street Crimes Unit. He testified that on August 29, 1998, he and officer Eddie Klein were working an off-duty paid detail at the Oakwood Mall for Dillard's Department Store. Clogher was in full uniform, including his sidearm, and was conducting anti-theft loss prevention for Dillard's.
At around 3:00 p.m., Clogher was alerted via the store's intercom that a suspected shoplifting was in progress. He observed one of the female associates of Dillard's waving frantically and pointing to an exit door. According to Clogher, as he was running toward the exit door, the associate was yelling, "They got us again, they hit us." Clogher went through the exit door and observed two subjects running toward a white station wagon. One of the individuals, later identified as Percy, was carrying a large Dillard's bag full of clothes and entered the vehicle on the driver's side. The other individual, who was never identified, entered the vehicle in the back seat on the passenger side.
Clogher stated that he pursued the two individuals and yelled, "Stop. Police. Get *825 out of the car." Clogher testified that the driver looked back at him and did not heed his commands. Percy and his accomplice were already in the car and started it as Clogher approached. Clogher continued to command the individuals to get out of the car and, according to the officer, Percy gave him a "blind stare" and proceeded to back out of the parking space. Clogher then observed that the driver's side window was down, and he reached into the vehicle with his right arm and to turn off the ignition. Clogher testified that his arm somehow became stuck or jammed in the steering wheel of the vehicle.
Clogher stated that the vehicle began to move forward at a rapid pace and that he became frantic and started yelling that he was stuck. Officer Klein was in pursuit behind Clogher and unsuccessfully tried to free him by grabbing Clogher's belt. Percy started to accelerate very rapidly, and Clogher had to run along side of the vehicle, still ordering him to stop. The deputy stated that the car continued to accelerate, and that he knew he could not run any faster beside the vehicle. Clogher, who testified that he was left-handed, drew his weapon and ordered Percy to stop the vehicle or he would shoot. According to Clogher, Percy continued to go faster and started to swerve. At about the time the car approached the speed that Clogher could no longer run along side of the vehicle, his arm became free. Clogher stated that he then grabbed onto something inside the car and held on as he was dragged along in the parking lot. At that point, Percy unsuccessfully tried to obtain the gun. Clogher testified that he started to pull the trigger, but after firing several rounds, the gun became inoperable.
According to Clogher, Percy made two sharp right turns, at about forty or fifty miles per hour, without braking, in the parking lot. Clogher yelled at Percy to stop, saying "..you're going to kill me, stop the car ..." Clogher stated that he then concentrated on holding on, and didn't know if he would fall under the tires, because Percy continued to swerve. The officer began to loose his grip and eventually let go of the vehicle, falling on the right side of his body. Clogher fell on his police radio and slid along the pavement of the parking lot. Clogher stated that he had abrasions to his elbow, shoulder, buttocks, knee, and ankle. His uniform was ripped, his shoes were scuffed and the heel of one shoe was almost disintegrated. His pants were torn. Percy left the parking lot and proceeded to escape.
Deputy Edward Klein of the JPSO testified that, on August 29, 1998, he was working a paid detail with Officer Clogher at the Dillard's Department Store. Klein observed Clogher running to an exit door in response to a suspected shoplift. Klein testified that Grace Lee, an employee of Dillard's, was standing at the exit pointing and shouting. As Klein exited the store he observed a black male running with a Dillard's bag and some clothes to a white Taurus station wagon. He also saw Clogher running after the suspect, while yelling, "Stop, police, stop."
Klein testified that the vehicle began to back up, and that Clogher reached into the car through the driver's side window. According to Klein, as Clogher reached into the vehicle, he heard the car engage into gear and it started moving forward quickly. Klein stated that, at that point, Clogher's arm became stuck in the car, that Clogher was screaming in a frightful voice, "I'm stuck, I'm stuck, I'm stuck." Klein tried to grab Clogher and pull him out of the vehicle.
According to Klein, the vehicle accelerated forward and made a hard right turn. Klein testified that he heard gunshots and estimated that the vehicle was traveling *826 40-50 miles per hour. The car began swerving and made another right turn at about 35-40 miles per hour. Klein also testified that, after the second right turn, Clogher was thrown from the vehicle. On cross-examination, Klein stated that he did not observe anyone in the vehicle brandish a weapon.
Pamela Brown, who was employed at Maison Blanche in Oakwood Mall at the time of the incident, testified that, on August 29, 1998, she was sitting in her vehicle drinking a Coke and eating her lunch. Brown stated that she heard several loud popping sounds. She turned and observed a vehicle traveling fast toward the back of the parking lot. Brown testified that she saw someone running along side the vehicle trying to hang on. She explained that the car was swerving all over, making turns around trees, as it were trying to throw the person off. When she first observed the car it was going about 30 miles per hour, but it picked up speed as it got toward the back of the lot and was eventually going about 45-50 miles per hour. Once the car came very close to a light pole, and then took a sharp turn, throwing off the person.
Jeremy Finney, a manager of the Bombay Company Store in the mall at the time of the incident, testified that, on the day in question, his wife had come to the mall to do some shopping with him. Finney stated that around 3:00 p.m. he went out to his vehicle to get his wallet. He witnessed two police officers approaching a white Taurus station wagon in the parking lot. Finney heard some yelling and observed one of the officers reach into the vehicle. According to Finney, the vehicle quickly went into reverse, and then the vehicle proceeded to drive off with the officer hanging in the window. He heard the tires squealing, and testified that while the vehicle was traveling forward away from the mall, he heard five or six gunshots. The car was weaving very fast from one side to the other, and the officer was trying desperately to get on his feet. Finney started his car to attempt to intercept them, and got to 40 miles per hour, while Percy's vehicle was still going. He also thought the car was going to hit a light pole on the side where the officer was holding on.
Detective Michael Moscona of the JPSO Homicide Division was the homicide officer for this case. He was called to the scene around 3:25 p.m. Moscona identified at trial photographs of the tire marks in the parking lot that were made by Percy's vehicle. Moscona testified that, through his investigation, he approximated the car had traveled 952 feet before Clogher was dislodged. Moscona stated that he found Clogher's gun clip, two spent casings, and one live round in the parking lot. Through his investigation, Moscona determined that Clogher had fired six rounds. He explained that Clogher's gun holds a maximum of fifteen rounds, and he also stated that Clogher's gun was fully loaded. He testified that eight rounds were still in the clip, two spent rounds and one live round were found in the parking lot, three spent rounds were found in Percy's vehicle, and one round was still chambered in Clogher's gun. Moscona testified that, based on this evidence, all 15 rounds were accounted for and Clogher had fired six shots.
Moscona stated that the description of a white Ford station wagon was broadcast over the police radio, and a vehicle fitting that description was later found in the 500 block of Dolhonde Street in Gretna. Detective George Giron was sent to secure the vehicle. Percy stipulated at trial that he was the registered owner of the white Ford Taurus station wagon found by Giron. Moscona testified that Percy's vehicle had a bullet hole in the windshield and the *827 head light. He also found blood on the steering wheel and driver's seat.
Moscona stated that he learned that Percy's vehicle had been reported stolen in New Orleans. He testified that Lieutenant Buras called the number that had reported the vehicle was stolen and talked to someone who identified himself as Christopher Percy. According to Moscona, Buras informed Percy that the vehicle was found in Jefferson Parish and the police needed him to come and identify the vehicle for recovery purposes. A meeting was arranged with Percy to identify the vehicle; however, he never showed up.
Moscona testified that, on August 31, 1998, Percy turned himself in to police at the Jefferson Parish Correctional Center. According to Moscona, Percy appeared to be in pain. Percy revealed to Moscona that he had been shot, but had not sought any medical attention. Rather, he tried to medically treat himself. Moscona stated that he and Detective Ralph Saacks transported Percy to a medical center for treatment. After Percy was processed and awaiting treatment, Moscona advised him of his rights. According to Moscona, Percy initiated conversation with the detectives and stated that he was driving the vehicle, but that he did not steal anything. Percy informed Moscona that a person named "Leonard" committed the theft and that he may have also been shot. Moscona testified that Leonard was never identified, nor did Percy reveal any information other than Leonard's first name.
Pamela Williams, a forensic scientist with the JPSO crime lab, examined the blood found in Percy's vehicle, and also examined Percy's blood. Williams testified that the genetic profile of the blood taken from the seat and steering wheel matched Percy's genetic profile.
Brad Guillot, a loss control investigator for K-Mart Corp., testified at trial. He stated that Percy was working at the K-Mart store in Elmwood Shopping Center in June of 1998. Guillot testified that, on June 19, 1998, two months before this incident, he became involved in an investigation of a suspected theft involving Percy. According to Guillot, he learned from a Mr. Talbot, the loss control manager of the K-Mart store, that Percy had been observed removing merchandise from the store and placing it into his white Ford Taurus station wagon. Guillot looked into Percy's vehicle and observed a Sony stereo and a case of oil.
Guillot stated that he, Talbot, and an Elmwood security officer approached Percy, who was still on the clock, in the store regarding the stolen merchandise. According to Guillot, Percy admitted to the theft, including other thefts on prior occasions. Guillot, Percy, Talbot, and three other Elmwood security officers went out the vehicle to retrieve the merchandise. Percy was asked by Guillot to open the back of his vehicle. Guillot stated that Percy claimed that the lock was broken. Guillot testified that he became cautious because he knew that the lock was not broken since Percy had been seen placing the merchandise in the back of the vehicle. According to Guillot, Percy entered the vehicle and started the ignition. Guillot tried to pull Percy from the vehicle, while an officer and Talbot tried to reach into the vehicle to remove the keys. Guillot testified that Percy put the car into reverse and backed out of the parking space. He also testified that one of the officers that was standing behind the vehicle jumped out of the way of the moving the car while it was backing up. Guillot stated that the vehicle's door struck him in the forehead, and Percy escaped out of the parking lot with the merchandise.
Percy contends on appeal that the evidence was insufficient to support the verdict *828 of attempted first degree murder. He urges that the state failed to show that he specifically intended to kill Officer Clogher, but rather that the evidence showed his desperate efforts to make good his escape.
The standard for appellate review of the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1] A review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt, but rather requires us to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt.[2]
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.[3] Under LSA-R.S. 15:438, when circumstantial evidence is used to prove a case, the trial judge must instruct the jury that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."
A different standard is applied on appellate review. The Louisiana Supreme Court recently commented:
On appeal, the reviewing court "does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events." ... Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.[4]
Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt.[5] Specific intent is the state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). It may be inferred from the circumstances and actions of the accused and from the extent and severity of the victim's injuries.[6]
The defendant was convicted of attempted first degree murder of a peace officer.
[F]irst degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm upon a fireman or peace officer (which includes a deputy sheriff) engaged in the performance of his lawful duties. LSA-R.S. 14:30(A)(2)(6). Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. LSA-R.S. 14:30.1.... The *829 crime of attempted murder, whether first or second degree, requires proof of the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal....[7]
In this case, Pamela Brown, who was eating her lunch in her car that day, testified at trial that Percy's vehicle was swerving in the parking lot trying to throw off Officer Clogher. Clogher, Klein, Finney and Brown all stated that, on the day of the incident, Percy was speeding in the range of 40-50 miles per hour in a parking lot full of cars, and that the incident occurred on a Saturday, one of the busiest days of the week at the mall. Brown and Finney also testified that Percy's car came very close to a light pole in the parking lot, and at first both thought it would hit the pole. Percy unsucessfully attempted to wrest Clogher's weapon from his grasp, and the deputy yelled out to Percy: "... stop, you're going to kill me ..." but that the car continued to accelerate.
Evaluating the evidence in a light most favorable to the state, the possible alternative hypothesis suggested by Percy, that he was merely trying to escape, was not sufficiently reasonable that a rational juror could not have found that Percy was guilty beyond a reasonable doubt. In view of the evidence that Percy continued to swerve his vehicle in a parking lot full of cars, fought with the deputy for his weapon, and dragged the officer, at a high rate of speed, around trees, maneuvering close to a light pole, the jury's finding that he had the specific intent to kill Officer Clogher was reasonable. This assignment of error is without merit.

ERROR PATENT
The record was reviewed for errors patent.[8] In so doing we note that at the time of the sentencing, the trial judge did not inform Percy of the prescriptive period for post-conviction relief as is mandated by LSA-C.Cr.P. art. 930.8. That statute provides that a court shall not consider an application for post-conviction relief, including applications which seek an out-of-time appeal, if the application is filed more than two years after the judgment of the conviction and sentence has become final. Therefore, the matter should be remanded for the trial court to inform Percy of the provisions of LSA-C.Cr.P. art. 930.8.[9]
Accordingly, Percy's conviction is affirmed. The case is remanded for the trial court to inform Percy of the provisions of LSA-C.Cr.P. art. 930.8. by sending appropriate written notice to him within ten days of the rendition of the opinion and then file written proof that he received the notice in the record of these proceedings.
CONVICTION AFFIRMED; REMANDED
NOTES
[1] Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).
[2] State v. Lapell, 00-1056 (La.App. 5 Cir. 12/13/00), 777 So.2d 541, 545.
[3] State v. Shapiro, 431 So.2d 372, 378 (La. 1982).
[4] State v. Mitchell, 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83.
[5] State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
[6] State v. Keating, 00-51 (La.App. 5 Cir. 10/18/00), 772 So.2d 740.
[7] State v. Girod, 94-853 (La.App. 5 Cir. 3/15/95), 653 So.2d 664, 668.
[8] LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
[9] State v. Cordero, 99-444 (La.App. 5 Cir. 6/1/99), 738 So.2d 84, 93, writs denied, 99-1877 and 99-1878 (La.11/24/99), 750 So.2d 981.