839 So.2d 262 (2003)
STATE of Louisiana
v.
Amin Elsayed AMIN.
No. 02-KA-916.
Court of Appeal of Louisiana, Fifth Circuit.
January 28, 2003.
*263 Harry J. Morel, Jr., District Attorney, Kim K. McElwee, Assistant District Attorney, Parish of St. Charles, Hahnville, LA, for Plaintiff/Appellee.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY, and WALTER J. ROTHSCHILD.
SOL GOTHARD, Judge.
Defendant, Amin Amin, appeals his conviction and sentence on a charge of second degree murder. For reasons that follow, we affirm.
The record shows that defendant was indicted by a St. Charles Parish Grand Jury for the first degree murder of Debra Matthews in violation of LSA-R.S. 14:30. Defendant was arraigned and pled not guilty. The indictment was subsequently amended to reduce the charge against defendant to second degree murder. Defendant was again arraigned and pled not guilty. The matter proceeded to a jury trial, after which, defendant was found guilty as charged. Defendant filed motions for a new trial and for a post-verdict judgment of acquittal, both of which were denied. After waiving all delays, defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Defendant made a timely motion for appeal, which was granted.
FACTS
The record shows that on Friday, March 26, 1999, Michelle Cortez, and the victim, Debra Matthews, went to Kenny's Keywest. Cortez testified that Debra met the defendant and Vincent Teal at Kenny's and later left with them while Cortez remained at the bar. Cortez testified that she next saw Debra, defendant and Teal at Debra's house on the afternoon of Saturday, March 27, 1999. Cortez's testimony indicated that on Saturday evening she accompanied Debra as they drove defendant and Teal to his apartment on Independence Street in Kenner. Cortez next saw the defendant and Teal on the night of Sunday, March 28, 1999 when she and *264 Debra picked the two up at the apartment on Independence Street. She testified that everyone spent the night at Debra's house that evening. Cortez testified that on Monday, March 29, 1999, she and Debra drove to Mississippi during the day and, after running some errands, returned to Debra's house where they "chilled" with defendant and Teal. Cortez's testimony indicated that she left Debra's home at around 10:30 or 11:00 p.m. and that Debra, defendant and Teal remained at the house. She testified that when she left Debra's, the house was spotless except for a stray beer can.
On cross-examination, Cortez testified that she, Debra, Teal and defendant had access to and consumed a number of drugs including Vicodin, Soma, Xanax, Marijuana and alcohol. Cortez also testified that at one point Teal began acting crazy because she failed to inform him that she was making a trip to the store. She testified that defendant remained quiet throughout the evening.
Officer Michael Folse of the St. Charles Parish Sheriff's Office testified that, on the morning of March 30, 1999, he received a dispatch call at approximately 3:43 a.m. that a car was on fire on Highway 90. With the help of the fire department, the vehicle fire was extinguished. It was subsequently determined that the victim, Debra Matthews, was the owner of the vehicle.
Louis J. Morales, Jr., the victim's brother, testified that, on March 30, 1999, the St. Charles Parish Sheriff's Office contacted him concerning his sister's car. He testified that when he drove to the scene he discovered his sister's car had been burned and her television and VCR, among other things, were loaded into her car. He then loaded the vehicle onto his flatbed truck and brought it to his shop. He testified that he contacted his father about the situation and subsequently went to his sister's home where he discovered the house "destroyed" and his sister's body stuffed underneath a mattress.
Dr. Susan Garcia of the Jefferson Parish Forensic Center testified as an expert in the field of forensic pathology. Dr. Garcia performed an autopsy on the body of Debra Matthews and determined that the cause of death was multiple sharp force injuries that involved the victim's head, chest, and torso. The doctor stated that she counted approximately 102 stabs, cuts, punctures, and slashes. The testimony of the doctor also revealed that the victim had defensive injuries on her arms and her left leg. Doctor Garcia further testified that a toxicology analysis was performed on the victim's body, which detected benzodiazepine, a metabolite of marijuana and nicotine. The doctor also opined that the injuries could have been made by different knives, but she testified that she could not say whether more than one person inflicted the wounds.
Several members of the St. Charles Parish Sheriff's Office testified regarding crime scene investigation. Ultimately, the officers' testimony showed that physical evidence collected from the scene included a knife blade found several inches from the body, a telephone receiver with a blood-like substance on it, and a cigarette butt containing a latent fingerprint and a blood-like substance. Fingerprints were also collected from the scene. Tests showed that fingerprints found on the cigarette butt were those of defendant, Amin.
Detective Sergeant Rodney Madere, Jr. from the St. Charles Parish Sheriff's Office testified that he was called to assist in a homicide investigation located at 431 Acorn Street in Boutte. Sergeant Madere testified that in the course of his investigation, he developed two suspects, Vincent Teal and defendant, Amin Amin. The two *265 suspects were eventually located at an apartment on Independence Street in Kenner and subsequently detained with the help of the Jefferson Parish Sheriff's Office. Sergeant Madere testified that the suspects were escorted out of the apartment and pictures of Vincent Teal were taken. Sergeant Madere testified that the pictures of Teal showed a cut on his right hand. Sergeant Madere also testified that he advised the defendant of his rights, and with the defendant's permission conducted an interview in the front seat of his police unit. The interview was recorded and the taped statement was played for the jury in open court.
In his statement, defendant told Sergeant Madere that he and his friend, Vincent Teal, went to Kenny's Keywest on Friday, March 26, 1999. He stated that they met a couple of girls, Debra and Michelle, and left the club around 11:30 p.m. After leaving the club, they picked up some beer and went to Debra's house where they remained until approximately 5:00 p.m. on Saturday, March 27, 1999. Defendant stated that he and his friend went to Debra's house on other occasions, with the following Monday, March 29, 1999, being the last time they were there. Defendant stated that the last time he saw Debra was at about 12:40 a.m. on Tuesday, March 30, 1999, when Debra dropped him and Teal off at home.
Sergeant Madere testified that, after taking the statement, defendant and Teal were escorted to the Kenner lockup where defendant's fingerprints were taken. The defendant and Teal were then returned to their apartment on Independence Street and released. Sergeant Madere testified that the defendants were arrested the next night on April 1, 1999.
Teal subsequently pled guilty to the murder of Debra Matthews, and the defense presented a portion of Vincent Teal's guilty plea colloquy in which Teal pled guilty to second degree murder. The "Factual Basis for Guilty Plea" was read to the jury. In the portion that was read, Teal acknowledged that, on the night of March 29, 1999, an argument occurred between Teal and Debra Matthews, which escalated and culminated in Teal committing the second degree murder of Debra Matthews. A knife was involved in the commission of the crime. Teal also acknowledged that the defendant, Amin Amin, was present in the apartment at the time of the crime. After the crime, Teal took Debra Matthews' car and set it on fire after it ran out of gas. Teal also acknowledged that he made phone calls from the victim's home at the approximate time of the crime.
Donald Carter, an investigator with the Louisiana State Fire Marshal's Office, testified as an expert in the cause and origin of fire. He examined Debra Matthews' vehicle at the St. Charles Parish Sheriff's Office and determined that the fire was intentionally set. Other testimony indicates the car was out of gas.
Gina Pineda of Reliagene Technologies testified as an expert in forensic DNA analysis. Pineda testified that defendant's DNA was taken from a cigarette wrapping paper with human blood recovered from the crime scene. DNA from a bloodstain taken from Debra Matthews' living room floor matched Teal's DNA. DNA on a knife blade found at the crime scene matched that of the victim, Debra Matthews. DNA from the filter of a cigarette butt matched the defendant's DNA. DNA from a bloodstain on a phone receiver matched the DNA of Teal.
Pineda testified on cross-examination that she also tested a beige striped shirt that yielded no match. She also tested samples obtained from beneath the victim's fingernail, which matched only the *266 victim's DNA. Pineda testified that the DNA from the cigarette butt was not in the form of blood but was likely from saliva.
John Martin, Security Manager for Bellsouth Telecommunications, testified as to telephone records. Martin testified the phone records indicated that numerous calls were made from Debra Matthews' phone to Louis Franklin and Ann Sartalamacchia. Martin also testified that numerous phone calls were made from a pay phone on Clearview Parkway to Louis Franklin and the apartment on Independence Street. Both Ms. Sartalamacchia and Mr. Franklin testified at trial to verify that the phone calls were received from defendant and Teal.
Diane Migliore testified that she knew of the defendant and Teal because they were dating her daughters and living with Migliore in March and April of 1999. She also testified that the phone rang in the early morning hours of March 30, 1999 and that her boyfriend at the time, Tom Rhodes, answered it. Her testimony indicated that, as a result of the phone call, Rhodes left the house and returned some time later with defendant and Teal.
Thomas Rhodes, a truck driver and heavy machine operator, testified that he knew defendant and Vincent Teal through his former girlfriend, Diane Migliore's, daughters, Amanda and Heidi Barnett. Rhodes testified that on the early morning hours of March 30, 1999, Heidi received a telephone call from the defendant and Teal. As a result of the call, Rhodes testified that he drove to an EZ Serve convenience store off of Clearview Parkway, and picked up defendant and Teal. Rhodes testified that, after a stop at his apartment, he brought defendant and Teal back to his girlfriend's apartment on Independence Street.
Heidi Barnett, Vincent Teal's girlfriend at the time of the murder, testified that defendant and Teal were living with her, her sister and mother during the months of March and early April of 1999. She testified that defendant and Teal left the apartment on Friday, March 26, 1999, and that she did not see the men again until Tuesday, March 30, 1999, at around 5:00 a.m. She testified that she washed both Teal and defendant's clothing, which included a brown striped shirt. She also testified that Teal had a cut on his hand.
Amanda Barnett, Heidi's sister and defendant's former girlfriend, testified that she did not see the defendant and Teal the weekend of Friday, March 26, 1999. She testified that she saw the defendant again on the morning of Tuesday, March 30, 1999. She testified that defendant had a little bit of blood on the left side of his shirt and that his clothes were wet, and that Teal had a cut on his hand. She testified that both defendant and Teal were acting really nervous and pacing.
LAW
On appeal, defendant presents two issues for our review. Defendant first asserts the evidence was insufficient to support the verdict of second degree murder. Defendant further argues that the evidence proved at most that he was guilty of accessory after the fact to the homicide committed by Vincent Teal.
The standard for appellate review of the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the *267 trial established guilt beyond a reasonable doubt. A reviewing court is required to consider the whole record and determine whether a rational trier of fact could have found guilt beyond a reasonable doubt. State v. Joseph, 01-1211 (La.App. 5 Cir. 4/10/02), 817 So.2d 174; State v. Lapell, 00-1056 (La.App. 5 Cir. 12/13/00), 777 So.2d 541, 545.
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372, 378 (La.1982). When circumstantial evidence is used to prove a case, the trial judge must instruct the jury that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA-R.S. 15:438.
A different standard is applied on appellate review. The Louisiana Supreme Court has commented:
On appeal, the reviewing court "does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events." ... Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. (emphasis in original, citation omitted). State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83
Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Percy, 02-255 (La.App. 5 Cir. 6/26/02), 822 So.2d 823, 828. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defendant, that hypothesis falls and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Chester, 97-1001 (La.12/19/97), 707 So.2d 973; State v. Jackson, 98-1254 (La.App. 5 Cir. 3/30/99), 733 So.2d 657, 661.
To prove second degree murder, the State must show the killing of a human being and that the defendant had the specific intent to kill or inflict great bodily harm. LSA-R.S. 14:30.1(A). Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Specific intent need not be proven as a fact, but may be inferred from the circumstances and actions of the defendant. State v. Harrell, 01-841 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019.
Principals are defined as "all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission or directly or indirectly counsel or procure another to commit the crime." LSA-R.S. 14:24. In order to obtain a conviction as a principal to a crime, the State must prove more than mere presence at the crime scene. State v. Pierre, 93-0893 (La.2/3/94), 631 So.2d 427; State v. Kirkland, 01-425 (La.App. 5 Cir. 9/25/01), 798 So.2d 263, 269, writ denied 01-2967 (La.10/14/02), 827 So.2d 415. An accessory after the fact is "any person who, after the commission of a felony, shall harbor, conceal, or aid the offender, knowing *268 or having reasonable ground to believe that he has committed the felony, and with the intent that he may avoid or escape from arrest, trial, conviction, or punishment." LSA-R.S. 14:25.
In the present case, the evidence shows that defendant was present in Debra Matthews' home on the night of the murder. Along with Vincent Teal's guilty plea colloquy, there was additional evidence that placed defendant in Debra Matthews' residence at the time of the murder. Michelle Cortez testified that defendant and Vincent Teal were present at Debra Matthews' residence when she left at approximately 10:30 to 11:00 p.m. on Monday, March 29, 1999. There is also testimony from Ann Sartalamacchia and Louis Franklin indicating that they received phone calls from the defendant and Teal in the early morning hours of Tuesday, March 30, 1999. John Martin, a Bellsouth Security Manager, testified that phone records indicated numerous calls were made from Debra Matthews' home phone to Ann Sartalamacchia's residence and additionally to Louis Franklin's residence between the hours of 11:52 p.m. and 2:44 a.m. on the night of March 29, 1999 through March 30, 1999. In addition to being present in defendant's home, there was DNA and fingerprint evidence establishing that defendant was present in Debra Matthews' bedroom. The DNA and fingerprint evidence was extrapolated from blood and saliva left on a cigarette butt found on the top of a dresser in Debra Matthews' bedroom.
Defendant argues that his mere presence at the residence or in Debra Matthews' bedroom does not establish that he assisted Teal in the murder and does not exclude the hypothesis that he was merely an accessory after the fact to a homicide committed by Teal.
However, the State introduced additional evidence as to the circumstances of the crime including a photograph of defendant, which was taken by Officer LeBlanc during the execution of the search warrant for the bodies of Teal, and defendant. The photograph showed scratches on defendant's chest suggesting that it was a possible source of the blood found on the cigarette. The State also introduced into evidence the murder weapon, a Forgecraft serrated kitchen knife containing the victim's DNA, as well as evidence that a second knife not recovered was involved in the homicide. The State presented evidence that a knife, fitting an empty black knife sheath found in Debra Matthews' kitchen, was missing. Testimony from Michelle Cortez established that Debra Matthews kept a knife next to her bed that fit the empty knife sheath. The State questioned Dr. Susan Garcia, the forensic pathologist who conducted the autopsy of Debra Matthews' body, as to whether a knife fitting the sheath could have caused the injuries to Debra Matthews' body, to which Dr. Garcia replied, "It's possible, yes," although she could not be certain whether the wounds on the victim's body were caused by more than one knife or by more than one person.
We also note that the State introduced evidence that the defendant assisted in the post-murder theft of numerous items from Debra Matthews' home, including her TV, VCR, CD player and automobile. Through Vincent Teal's guilty plea and other testimony, it was established that Teal stole certain items from Debra Matthews' home, including her vehicle. After the vehicle ran out of gas, Teal intentionally set the vehicle ablaze. Although Teal's guilty plea colloquy did not implicate the defendant in the murder and post-murder theft, the evidence established that defendant was present during the theft. Officer Robert Toups testified that the television *269 in the trunk of the vehicle was very large and that he was not able to remove it without the help of another officer indicating that Teal would have needed help in stealing the television. The evidence also established that defendant was present with Teal after the theft of the vehicle. Thomas Rhodes testified that, after receiving a call from the defendant and Teal, he picked them up at an EZ serve located off of Clearview near the Huey P. Long Bridge.
Amanda Barnett testified that defendant and Teal were acting nervously and pacing after returning home to the apartment on Independence Street. She also testified that the defendant had a bit of blood on the left side of his shirt. When Amanda Barnett asked defendant how he got blood on his shirt, defendant told her the blood came from Teal's hand which was cut in a bar fight. Heidi Barnett testified that she washed both Teal and defendant's clothing, including a bloody shirt.
The jurors also heard defendant's statement taken by Sergeant Madere in which defendant stated that the last time he saw Debra Matthews was about 12:40 a.m. on Tuesday, March 30, 1999, when Debra dropped him and Teal off at the Independence Street apartment. However, there was ample evidence that the statement was untrue. Evidence introduced at trial indicated that defendant was present at Debra Matthews' home as late as 2:44 a.m. on the morning of March 30, 1999. There was further evidence that defendant did not return home until 5:00 a.m. Such a finding of purposeful misrepresentation reasonably raises the inference of a "guilty mind," just as the case of "flight" following an offense or the case of a material misrepresentation of fact by a defendant following an offense. State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 85, citing, State v. Davenport, 445 So.2d 1190 (La. 1984).
There was also evidence presented that established specific intent to kill or inflict great bodily harm. Dr. Susan Garcia, the forensic pathologist who conducted the autopsy of Debra Matthews' body, testified that the cause of death was multiple force injuries that involved the victim's head, chest and torso. In all, Dr. Garcia counted approximately 102 stabs, cuts, punctures and slashes. Dr. Garcia also testified that the victim had numerous defensive wounds to her arms and leg, which indicate that she was struggling while being stabbed. The severity of such an attack on the victim indicates that the perpetrator had the specific intent to kill or to inflict great bodily harm. See, State v. Richard, 525 So.2d 1097 (La.App. 5 Cir. 1988), writ denied, 538 So.2d 609 (La. 1989).
Additionally, the State introduced numerous photographs depicting the crime scene, which were shown to the jury. One of these photographs evidenced the brutal nature of the crime, showing Debra Matthews' body stuffed underneath a mattress. There were also photographs showing Debra Matthews' home in total disarray. Most of the destruction was confined to the bedroom where the victim's dresser drawers were thrown onto the floor with their contents scattered about. There was also evidence showing a broken mirror and picture frame, overturned chairs, a smashed telephone and holes punched into a wall. Such photographs exhibited the violent nature and severity of the attack, providing evidence to the jury that defendant must have been aware of what was occurring in Debra Matthews' home and more particularly in her bedroom.
In the present case, the jury was given instructions on the law regarding principals *270 and accessory after the fact. The jury rejected defendant's argument that Teal acted alone in killing Debra Matthews and that defendant was merely an accessory after the fact to the homicide. The jury heard evidence that the victim's home was ransacked, that the defendant was present in the victim's home during the murder, that a knife was missing from the home of Debra Matthews, that defendant's blood was found on a cigarette butt at the murder scene, that defendant participated in the theft of the victim's property after her murder, and that he had blood on his shirt when he returned home on the morning after the crime. Based on the totality of the evidence presented at trial, and viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found, beyond a reasonable doubt, that defendant was more than merely present at the crime scene and that he was a principal to the commission of this murder. We find no merit in this assignment.
In the second assignment of error, defendant contends the State improperly vouched for the integrity of its case against the defendant. Defendant argues that the State, in its closing argument on rebuttal, made an improper reference to the quality of the police work and investigation in violation of LSA-C.Cr.P. art. 774. The defendant further argues that the prosecutor's comments constituted improper vouching for the evidence such that a mistrial should have been declared.
The allegedly impermissible resort to personal experience came in the State's closing argument on rebuttal in which the prosecutor, in an attempt to address defense counsel's assertion that the police failed to match a knife imprint on a bed to the murder weapon, stated:
Ms. McElwee [Prosecutor]:
What is this about the knife blade not being tested? The knife blade was tested. Look at it. It still has blood on it, Debra Matthews' blood. I don't know what he's talking about. Her DNA. If anything, if there's anything about this, this DNA evidence should ring true for you, it is that this knife blade that helped kill Debra Matthews had her blood on it. And the fingernail scrapings were hers.
I'm not tryingdo I look like I'm trying to hide something from you? That is laughable. I brought everything in this casethe police did an unbelievable job in this case. This is the best example of police work I've ever seen in my life in my career.
Defense counsel promptly objected to the statement and the trial court overruled the objection noting that it was argument.
The scope of closing argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the State or defendant may draw therefrom and to the law applicable to the case. The State's rebuttal shall be confined to answering the argument of the defendant. LSA-C.Cr.P. art. 774. Although prosecutors are allowed broad latitude in choosing closing argument tactics, prosecutors may not resort to personal experience or turn argument into a plebiscite on crime. Nevertheless, a conviction is not reversed due to improper remarks during closing arguments unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Rochon, 98-717 (La.App. 5 Cir. 3/10/99), 733 So.2d 624, 630.
In the case of State v. Wiley, 513 So.2d 849 (La.App. 2 Cir.1987), writ denied, 522 So.2d 1092 (La.1988), a prosecutor made the statement, "This is the best fingerprint case I've ever had." The Second Circuit held that while the statement may have gone beyond the proper scope of argument, but only barely so, it could not *271 be said to have denied defendant a fair trial before an impartial jury. The court further noted that the trial judge had properly instructed the jury that closing arguments were not to be considered as evidence.
In State v. Martin, 93-0285 (La.10/17/94), 645 So.2d 190, 200, cert. denied, 515 U.S. 1105, 115 S.Ct. 2252, 132 L.Ed.2d 260 (1995), the Louisiana Supreme Court noted that "much credit should be accorded to the good sense and fair mindedness of jurors who have seen the evidence and heard the arguments, and have been instructed repeatedly by the trial judge that arguments of counsel are not evidence."
We find that, although the prosecutor's remarks in the present case constitute an improper resort to personal experience, those remarks did not deny defendant a fair trial before an impartial jury. The trial court twice informed the jury that the statements and arguments made by the attorneys were not to be considered as evidence. We find no merit in this assignment.
For reasons discussed herein, we affirm defendant's conviction and sentence.
AFFIRMED.