757 So.2d 797 (2000)
STATE of Louisiana
v.
Dale YOUNG.
No. 99-KA-1054.
Court of Appeal of Louisiana, Fifth Circuit.
February 16, 2000.
*798 John M. Crum, District Attorney, Rodney A. Brignac, Assistant District Attorney, 40th Judicial District, Parish of St. John the Baptist, Attorneys for Plaintiff/Appellee.
Katherine M. Franks, Baton Rouge, Louisiana, Attorney for Defendant/Appellant.
Panel composed of Judges CHARLES GRISBAUM, Jr., SOL GOTHARD and MARION F. EDWARDS.
GOTHARD, Judge.
Defendant, Dale Young, appeals his conviction and sentence on a charge of illegal discharge of a firearm in violation of LSA-R.S. 14:94. For reasons that follow, we affirm.
The record before us shows that Young was charged by bill of information with the crime on June 17, 1998. He plead not guilty and was tried before a jury on March 9, 1999. At the conclusion of the trial, Young was found guilty as charged. A motion for post-verdict judgment of acquittal, or in the alternative, motion for new trial was denied. Subsequently, the State filed an habitual offender bill of information alleging that the defendant was a third felony offender. That bill of information was later withdrawn by the State. In due course, Young was sentenced to twenty months at hard labor, with credit for time served. A timely motion for appeal *799 was granted and is the subject of this opinion.
The incident which forms the basis of the crime charged apparently stems from an ongoing family feud pitting defendant Young and his brother, Steven, against Dwayne Perrilloux and his friend Willie Henderson. On the day in question, shots were fired between the two factions at a detailing shop owned by Perrilloux.
At trial the jury heard testimony from Charles Michel, who lives next door to the detailing shop. He testified that he was standing in his carport when he heard the sound of seven to nine gunshots coming from the shop. When he looked in that direction he saw a black man near a truck with a pistol firing toward the building. He also heard shots coming from inside the building. He did not see who was shooting from inside the building and he could not give a detailed description of the man he saw outside. He did see a man he believed to be the owner of the shop standing outside of the building. That man did not have a gun. He also testified that the man near the truck fired first.
Dwayne Perrilloux, who runs the detailing shop, was present during the incident. He testified that he was standing in front of his business with his brother, Dwight Perrilloux, and a friend, Willie Henderson, when defendant and his brother, Steven Young, arrived. The Youngs immediately started to argue with Perrilloux and his companions. Perrilloux testified that the argument was a continuation of an ongoing dispute which involved a past shooting. As the argument escalated, defendant retrieved a .9 mm semiautomatic pistol from his truck and started firing it.
The Perrilloux brothers were not armed, but Henderson was. He fired a gun at defendant in self-defense. Defendant and his brother then fled the scene in their truck. Perrilloux testified that he saw Mr. Michel standing outside of his house. He stated that Mr. Michel was mistaken in his assertion that there was only one person outside the detailing shop.
Detective Royal Burke of the St. John the Baptist Parish Sheriffs Office testified that he investigated the shooting incident. He found several bullet casings at the scene of the shooting. The positions of the casings were consistent with the descriptions given by the witnesses. Detective Burke further testified that the Sheriff's Office had seized a .9 mm handgun in relation to another incident involving defendant, but that it was unclear whether it was the gun used in the May 12, 1998 shooting.
After defendant's arrest, Detective Burke advised him of his Miranda[1] rights, and defendant agreed to waive those rights and submit to an interview. Detective Burke testified that he began to interview defendant at 11:15 a.m. on May 12, 1998. The detective took a tape recorded statement from defendant beginning at 1:36 p.m., in which defendant claimed that he fired his gun in self-defense. The tape was admitted into evidence over defense counsel's objection, and was played for the jury.
Defendant testified on his own behalf at trial. Like Perrilloux, he indicated that the shooting stemmed from an earlier dispute. Defendant testified that, on the morning of May 12, 1998, he gave Ulysses Joseph a ride to look for a missing truck. It is unclear from the testimony who owned the truck, or how it was taken. Defendant did testify that neither he nor Joseph owned the truck in question. During their search, they encountered Dwayne Perrilloux and Willie Henderson at a Kart `N' Kary convenience store in Reserve. Joseph became involved in an argument with Perrilloux. Henderson then pulled a gun on defendant. Employees at the store called police, and defendant told an officer that Henderson had a gun. However, the officer did not act on the information.
*800 Defendant testified that, after the incident at the store, he drove to his home in LaPlace and retrieved a gun. He picked up his brother, Steven, and the two men went to Perrilloux's Auto Detailing. According to defendant, Willie Henderson began to verbally harass him, then pulled a gun and fired it at him. Defendant reacted by taking a gun from his own vehicle and firing at Henderson.
In brief to this court, defendant assigns four errors for our consideration. By the first two assignments of error, defendant argues the trial court erred in not allowing him to introduce evidence of the character of Willie Henderson.
Defendant sought to produce evidence of Henderson's propensity for violent behavior pursuant to LSA-C.E. article 404A(2).[2] In a motion in limine made at the beginning of trial, defense counsel asked the court to consider whether he would be allowed to present evidence of Henderson's character. Counsel argued that there was a history of assaultive behavior between defendant and Henderson, and that defendant was entitled to use the character evidence to support his claim that he fired his gun in self-defense.
The State responded that article 404 was not applicable to this case, as there is no victim in an illegal discharge of a firearm. The trial court agreed with the State's argument, and denied defendant's motion. Defendant raised the issue again in his motion for new trial, and the trial court again rejected his argument.
A review of the facts and law in this case shows the trial court was correct in its ruling. LSA-R.S. 14:94 provides, in pertinent part:
Illegal use of weapons or dangerous instrumentalities is the intentional or criminally negligent discharging of any firearm, or the throwing, placing, or other use of any article, liquid, or substance, where it is foreseeable that it may result in death or great bodily harm.
The statute seeks to punish those who put others in potential danger of harm. A violation of the statute does not create a specific victim. Even if Willie Henderson were to be considered a victim for purposes of article 404, the requirements for admission of character evidence under this article were not met.
Evidence of the dangerous character of the victim is admissible only if the accused first produces evidence that, at the time of the incident, the victim made a hostile demonstration or committed an overt act against the accused of such character that would have created, in the mind of a reasonable person, a belief that he was in immediate danger of losing his life or suffering great bodily harm. State v. Miles, 98-2396 (La.App. 1 Cir. 6/25/99), 739 So.2d 901, 906. An "overt" act within the meaning of article 404 is "any act of the victim which manifests in the mind of a reasonable person a present intention on his part to kill or do great bodily harm." The overt act must be directed at the accused. State v. Scott, 31-379 (La.App. 2 Cir. 10/28/98), 720 So.2d 415, 424. Evidence of an overt act has been interpreted as "appreciable evidence" in the record relevantly tending to establish the overt *801 act. State v. Brooks, 98-1151 (La.App. 1 Cir. 4/15/99), 734 So.2d 1232, 1237.
In the instant case, Dwayne Perrilloux testified that it was defendant who came to his place of business and initiated the exchange of gunfire. Willie Henderson responded by retrieving a gun from his car and firing it in defense of himself and his companions. The testimony of Mr. Michel also indicates that it was defendant who fired first, and that he fired six to seven shots. If those witnesses are to be believed, it was the defendant who committed the initial hostile act.
Even defendant's testimony does not show that he was justified in firing at Henderson and the Perrilloux brothers. He stated that he left the altercation he had with Henderson at the Kart `N' Kary in Reserve, and he made a trip back to LaPlace to pick up his gun and his brother. Then he went back to Reserve for the express purpose of confronting Henderson. Thus, defendant conceded that he sought the second confrontation, casting doubt on his claim of self-defense.
In order to reverse a conviction on a claim of improperly excluded evidence, this court must find that the trial court was wrong in excluding the evidence and that the defendant was prejudiced by the error. State v. Jarvis, 97-1174 (La. App. 5 Cir. 4/9/98), 710 So.2d 831, 835, writ denied, 98-2219 (La.1/8/99), 734 So.2d 1222. We do not find that the trial court erred in excluding the character evidence. Moreover, defendant was not prejudiced by the ruling. He testified on his own behalf at trial, and was allowed ample opportunity to present his case for self-defense. Defendant stated that Henderson has been involved in several shootings and armed robberies, and that Henderson himself had been shot as a result of this criminal activity. Defendant further testified that Henderson has a gun with him every time he sees him, because he has many enemies. Defendant claimed he did not shoot at Henderson until after Henderson fired at him, and that he was only trying to defend himself. The jury heard defendant's testimony, and apparently rejected it. These assignments of error are without merit.
In the third assignment, defendant argues the trial judge erred in misdefining the elements of the crime charged so as to reduce the burden of proof required by the State. Defendant argues he is entitled to a new trial, as the judge improperly instructed the jury as to the elements of the charged offense.
The bill of information in the instant case alleges that defendant "did knowingly and intentionally discharge a firearm" in violation of LSA-R.S. 14:94. The statute itself prohibits the "intentional or criminally negligent discharging of any firearm." (Emphasis added). Defendant complains he was prejudiced by the trial court's instructions to the jury on criminal negligence, arguing that the court essentially misdefined the elements of the offense, and thereby lessened the State's burden of proof.
Defendant concedes that he failed to make a timely objection to the court's jury charges. The threshold question, then, is whether defendant preserved this issue for appeal. The general rule, as stated in LSA-C.Cr.P. art. 801, is that a party may not appeal the giving of, or failure to give, a jury charge unless an objection is made before the jury retires or within such time as the court may reasonably cure the alleged error. See also, LSA-C.Cr.P. art. 841A, which provides, in part, that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." Defendant correctly asserts that our courts have sometimes reviewed jury instructions, despite the absence of a contemporaneous objection, where the defendant's due process rights are jeopardized.
In State v. Williamson, 389 So.2d 1328 (La.1980), the Louisiana Supreme Court found that a substantial probability that jurors may have convicted the defendant *802 under an incorrect definition of the crime justifies setting aside a conviction on due process grounds even in the absence of a contemporaneous objection. The Williamson court reversed the defendant's murder conviction, despite the defendant's failure to object at trial, upon finding error in the trial court's definitions of the charged and responsive crimes. This court has used the reasoning in Williamson to determine whether review of allegedly erroneous jury charges is justified on due process grounds. See, State v. Lassere, 95-1009 (La.App. 5 Cir. 10/1/96), 683 So.2d 812, 819, writ denied, 96-2655 (La.4/18/97), 692 So.2d 445; State v. Page, 96-227 (La.App. 5 Cir. 8/28/96), 680 So.2d 104, 106.
In State v. Howard, 98-0064 (La.4/23/99), 751 So.2d 783, cert. denied, ___ U.S. ___, 120 S.Ct. 420, 145 L.Ed.2d 328 (1999), the Louisiana Supreme Court recently revisited the issue of when the courts should waive the contemporaneous objection rule with respect to jury charges. The Howard court commented:
Although Louisiana courts have sometimes waived the contemporaneous objection rule, see State v. Williamson, 389 So.2d 1328, 1331 (La.1980) (an error involving "the very definition of the crime of which defendant was in fact convicted... is of such importance and significance as to violate fundamental requirements of due process"), this Court has also on two occasions explicitly cautioned that Williamson did not establish jurisprudentially the equivalent of a "plain error" rule created by F.R.Crim.P. 52(b). State v. Arvie, 505 So.2d 44, 48 (La.1987); State v. Thomas, 427 So.2d 428, 435 (La.1982) (on rehearing) (Williamson "should not be construed as authorizing appellate review of every alleged constitutional violation and erroneous jury instruction urged on appeal without timely objection at occurrence."); see also [State v. ]Belgard, 410 So.2d 720, 727 (La.1982) (to preserve issue of erroneous instruction on elements of attempted second degree murder, defendant must have objected to the charge at trial).
751 So.2d 783, 804.
The jury charges of which defendant complains herein are as follows:
Title 14, Section 94: The Defendant is charged with the illegal use of a weapon. Illegal use of weapons is the intentional or criminally negligent discharging of any firearm where it is foreseeable that the discharging may result in death or great bodily harm to a human being. Foreseeable means that which would ordinarily would be anticipated by a human being of average, reasonable intelligence and perception. Thus, in order to convict the Defendant of illegal use of a weapon you must find, (1) that the Defendant intentionally or criminally-In order to find him guilty you must, (1) find that the Defendant intentionally or in a criminally negligent manner discharged a firearm, and (2) that it was foreseeable that this discharge might result in a death or great bodily harm to a human being.
Criminal negligence exists when there is such disregard of the interest of others that the offenders [sic] conduct amounts to a gross deviation below the standard of care expected of a reasonable, careful person under similar circumstances. The mere failure of a person to act reasonably does not constitute criminal negligence. The conduct must go so far below that expected of a reasonably, careful person that it can be considered a gross deviation.
Defendant further complains of some of the instructional comments the court made at the commencement of trial with regard to the elements of the charged offense.
The State was authorized, under LSA-C.Cr.P. art. 480,[3] to charge defendant *803 under either or both theories of illegal discharge: intentional or criminal negligence, and proof of either will support the conviction. State v. Walker, 26,026 (La.App. 2 Cir. 5/4/94), 637 So.2d 583, 587, writ denied, 94-1369 (La.9/30/94), 642 So.2d 868. Although the bill of information charged only intentional discharge, the prosecutor mentioned both intent and criminal negligence in her opening statement. The State's case was geared primarily to proving intentional discharge.
Under LSA-C.Cr.P. art. 802, the trial court is required to charge the jury as to the law applicable to the case. Defendant argues that the instructions on criminal negligence were not applicable to the case, and that the trial court therefore misstated the law.
The court tracked the language of LSA-R.S. 14:94 in charging the jury. In that respect, the court did not misstate the law. Accordingly, we do not find that the defendant is entitled, under the holding in Williamson, to a review of this issue, absent a contemporaneous objection.
In the final assignment of error, defendant argues the trial counsel was ineffective in failing to object to the jury charges and the verdict form. Defendant complains that his trial counsel was deficient in failing to object to the court's jury charges on criminal intent, and in failing to object to the responsive verdicts provided on the jury's verdict sheet.
The Louisiana Supreme Court has held that a claim of ineffective assistance of counsel is most appropriately addressed through application for post-conviction relief rather than direct appeal, so as to afford the parties an adequate record for review. State v. Truitt, 500 So.2d 355 (La.1987). It is well settled, however, that where the record contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Hamilton, 92-2639 (La.7/1/97), 699 So.2d 29, 31, cert. denied, 522 U.S. 1124, 118 S.Ct. 1070, 140 L.Ed.2d 129 (1998); State v. Alexis, 98-1145 (La.App. 5 Cir. 6/1/99), 738 So.2d 57, 71. We find the record in the instant case sufficient to facilitate a review of defendant's claim.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show 1) his attorney's performance was deficient, and 2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Williams, 98-1146 (La.App. 5 Cir. 6/1/99), 738 So.2d 640, 652.
To show "prejudice" as required in order to establish ineffective assistance of counsel, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. Id. Effective assistance of counsel does not mean errorless counsel, or counsel who may be judged ineffective on mere hindsight. State ex rel. Graffagnino v. King, 436 So.2d 559, 564 (La.1983).
For the reasons discussed infra, defense counsel's performance in failing to object to jury instructions on criminal negligence was not deficient. Even if counsel's performance is considered to have been deficient, defendant was not prejudiced thereby. The evidence of intentional discharge of a weapon was so great that it is unlikely the jury's verdict was influenced by the instructions at issue.
*804 The verdict sheet in the instant case lists the possible verdicts as "Guilty" and "Not Guilty". Defendant argues that counsel should have moved the court to add attempted illegal discharge of a weapon as a responsive verdict. LSA-C.Cr.P. art. 814 lists responsive verdicts for certain offenses, but illegal discharge of a firearm is not among the enumerated offenses. Consequently, LSA-C.Cr.P. art. 815 controls. That article provides:
In all cases not provided for in Article 814, the following are responsive:
(1) Guilty;
(2) Guilty of a lesser and included grade of the offense even though the offense charged is a felony, and the lesser offense a misdemeanor; or
(3) Not guilty.
LSA-C.Cr.P. art. 803 provides that the trial court shall charge the jury as to the law applicable to each offense when the offense charged includes other offenses of which the accused could be found guilty under article 815. State v. Dufore, 424 So.2d 256 (La.1982). The Louisiana Supreme Court has formulated a test to determine whether a crime is a lesser and included offense charged under article 815(2). In State v. Simmons, 422 So.2d 138, 142 (La.1982), the court provided:
[T]he test is whether the definition of the greater offense necessarily includes all the elements of the lesser. Stated in another way for practical application, this merely means that, if any reasonable state of facts can be imagined wherein the greater offense is committed without perpetration of the lesser offense, a verdict for the lesser cannot be responsive.
See also, State v. Blanchard, 99-599 (La. App. 5 Cir. 11/10/99), 749 So.2d 19.
In State v. Walker, supra, 637 So.2d at 587, the court found that attempt is a responsive verdict to a charge of intentional discharge under LSA-R.S. 14:94, although it is not a responsive verdict with respect to an allegation of criminally negligent discharge of a weapon. Considering that the State charged defendant with intentional discharge, attempt would be a proper responsive verdict. Considering the evidence at trial, however, such a responsive verdict would not have been appropriate. The evidence was sufficient to prove defendant actually fired his weapon, and defendant's own testimony supports such a finding.
In State v. Henry, 449 So.2d 486, 488-489 (La.1984), the Supreme Court stated:
[A]lthough the court must charge the jury of the law applicable to lesser included offenses under LSA-C.Cr.P. art. 803, the charges must be pertinent; there must be evidence which would support a conviction of the lesser offense. LSA-C.Cr.P. art. 807; State v. Anderson, 390 So.2d 878 (La.1980); State v. Toomer, 395 So.2d 1320 (1981). A trial judge is required "to charge the jury as to the law applicable to the case, under which he is required to cover every phase of the case supported by the evidence, whether or not accepted by him as true." (Emphasis supplied). State v. Marse, 365 So.2d 1319 at 1323 (La.1978). See State v. Mead, 377 So.2d 79 (La.1979). A comment at La.L.Rev. 211 points out that LSA-C.Cr.P. art. 803 can reasonably be interpreted as requiring only those charges of which the accused can be found guilty under the indictment and the evidence.
See also, State v. Thornton, 611 So.2d 732 (La.App. 4 Cir.1992).
Given the foregoing discussion, we do not find trial counsel deficient in failing to pursue attempted illegal discharge as a responsive verdict. Since the evidence precluded a finding of attempt, defendant was not prejudiced by his attorney's performance.
Upon review of the record we find that, at the time of sentencing, the trial court failed to inform defendant of the delays for filing an application for post-conviction *805 relief under LSA-C.Cr.P. art. 930.8. At the time of sentencing in this case, the article allowed a defendant three years "from the day the judgment of conviction and sentence has become final" within which to apply for post-conviction relief. However, an amendment to article 930.8, effective on August 15, 1999, shortens that prescriptive period. 1999 La. Acts 1262. The amended article provides, in pertinent part:
A. No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922, unless any of the following apply:
. . . .
(3) The application would already be barred by the provisions of this Article, but the application is filed on or before October 1, 2001, and the date on which the application was filed is within three years after the judgment of conviction and sentence has become final.
The application of the amended prescriptive period in defendant's case would not violate ex post facto prohibitions, as the article itself does not relate to an offense or its punishment. See, State ex rel. Glover v. State, 93-2330 (La.9/5/95), 660 So.2d 1189, 1201; State v. Boles, 99-KA-662 (La.App. 5 Cir. 11/10/99), 750 So.2d 1059.
The district court is ordered to send written notice of the amended prescriptive period to defendant within ten days of the rendering of the opinion in this case, then file written proof in the record that defendant received said notice. State v. Stelly, 98-578 (La.App. 5 Cir. 12/16/98), 725 So.2d 562.
The defendant's conviction and sentence are affirmed. The matter is remanded to the trial court for compliance with the order to notify defendant of the prescriptive period for filing post-conviction relief.
AFFIRMED AND MATTER REMANDED.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] LSA-C.E. art. 404 provides, in pertinent part:

A. Character evidence generally. Evidence of a person's character or a trait of his character, such as a moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
. . . .
(2) Character of victim. (a) Except as provided in Article 412, evidence of a pertinent trait of character, such as a moral quality, of the victim of the crime offered by an accused, or by the prosecution to rebut the character evidence; provided that in the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of his dangerous character is not admissible....
[3] LSA-C.Cr.P. art. 480 provides:

If an offense committed by doing one or more of several acts, or by one or more of several means, or with one or more of several intents, or with one or more of several results, two or more of such acts, means, intents, or results may be charged conjunctively in a single count of an indictment, or set forth conjunctively in a bill of particulars, and proof of any one of the acts, means, intents, or results so charged or set forth will support a conviction.