JOHNSON, J.
| defendant, Kenneth E. Hicks, III, appeals his conviction for second degree murder rendered in the 40th Judicial District Court, Division “B”. For the following reasons, we affirm Defendant’s conviction and sentence and remand the matter for correction of the Louisiana Uniform Commitment Order.
FACTS AND PROCEDURAL HISTORY
On April 15, 2013, the St. John the Baptist Grand Jury indicted Defendant, with second degree murder, in violation of La. R.S. 14:30.1. Defendant was arraigned and pleaded not guilty on April 16, 2013. On January 20-22, 2016, the ease was tried before a 12-person jury.
At trial, Dontae Bond, Defendant’s nephew, testified that on the night of February 20, 2013, he was at Alex’s Sports Bar[1] with two friends. While having drinks and talking to people in the patio area of the bar, he heard a gunshot. Mr. Bond looked back and saw Defendant holding a gun, and he also saw a man on the ground. He did not see anyone else in that room with a gun after the gunfire. Mr. Bond identified the victim as his friend, “Turk.”[2] He asserted that he and Defendant were not together that night, but he and Defendant were in the bar at the same time.
Mr. Bond testified that after the shooting, he and his friends left. They drove around and then went to Defendant’s house. Mr. Bond stated that he spoke to Defendant and asked him what happened, after which Defendant said, “Don’t say nothing.” The police arrived afterwards. Mr. Bond indicated that the police arrested him in connection with the shooting, and he gave three statements to them. He said he initially told them he did not know anything, but ultimately he told the police what happened because he did not want to be charged with a crime he did 1 ?not commit.
Wilfred Lewis testified that on February 20, 2013, he also was in Alex’s Sports Bar. He stated that he arrived at 10:15 p.m., after which his friend, “Turk,” asked him to give him a ride home. Mr. Lewis sat in the patio area of the bar and waited while “Turk” helped his uncle, the owner of the bar, clean the area. While sitting there, Mr. Lewis heard a voice and then “Turk’s” voice, after which Mr. Lewis looked down for a second and then heard a shot. Mr. Lewis testified that when he looked up, he saw “Turk” spin around and fall on a table. A man, whom he later identified as Defendant, turned around and had a gun in his right hand. Defendant put the gun in his pocket. Mr. Lewis explained that when Defendant passed by him to leave, he brushed against Defendant. Defendant then turned around and pointed a gun at Mr. Lewis, and Mr. Lewis held up his hands begging Defendant not to shoot him. *461 Mr. Lewis testified that Defendant subsequently backed out the screen door, walked to a car across the street, and left the scene.
Mr. Lewis recalled that Defendant was not upset and had no emotional response after the shooting. He stated that he did not know Defendant’s name, but he would never forget his face. He also stated that no one else had a gun that night. Mr. Lewis was positive that Defendant was in the bar that night, and Defendant shot “Turk.” Mr. Lewis admitted that he had seven convictions for possession of cocaine and other non-drug convictions. Mr. Lewis insisted that no one made promises to him for his testimony.
The victim, Anthony Young, died as a result of the shooting. Dr. Samantha Huber, who was accepted as an expert in forensic pathology, testified that she performed the autopsy on the victim. She determined that the cause of death was a gunshot wound to the inner aspect of his left eye with a bullet going through the base of his skull through his brain and coming to rest in a fracture at the back right of his skull. Dr. Huber stated that she retrieved the projectile and gave it to a crime Rscene technician. Dr. Huber testified that the gunshot wound was from an intermediate range of six inches to two feet away. She further stated that the toxicology report reflected that there was cocaine and alcohol in the victim’s system. Dr. Huber asserted that there was evidence of recent drug use because there was “parent cocaine” in his blood.
Detective Michael Pugh of the St. John Parish Sheriffs Office crime scene division testified that on the night of February 20, 2013, he responded to a call involving a homicide at Alex’s Sports Bar. When he arrived, he collected evidence and,took photographs. He identified the contents of the victim’s pockets, which included cocaine.[3] Detective Pugh stated that he searched Defendant’s home but found no guns or ammunition inside. He further stated that he searched the Nissan vehicle parked in front of Defendant’s home and seized a 9mm Taurus handgun from the trunk and two phones from the interior of the vehicle. Detective Pugh asserted that he collected a Winchester .45 caliber shell casing from the floor of the bar. He maintained that no gun was ever found that linked Defendant to the crime.
Detective Walter Stevens, Jr. of the St. John Parish Sheriffs Office testified that on February 20, 2013, he responded to a call involving a homicide at Alex’s Sports Bar. His investigation led him to arrest Defendant and Mr. Bond. Defendant did not give a statement and wanted an attorney. Mr. Bond initially denied knowing anything but later admitted that Defendant shot the victim. Detective Stevens testified that Mr. Lewis later contacted him and positively identified Defendant in a photographic lineup as the shooter. He further testified that Mr. Lewis'also positively identified Mr. Bond as being present at the time of the shooting.
Detective Juan Watkins of the St. John Parish Sheriffs Office testified that |4he interviewed Mr. Lewis in connection with the homicide that occurred on February *462 20, 2013. Mr. Lewis recounted the events of the evening in question to the detective. Detective - Watkins presented Mr. Lewis with a photographic lineup, after which Mr. Lewis positively identified Defendant.
Laneka Frank-Hicks, Defendant’s wife, provided an alibi for Defendant. She testified that on February 20, 2013, at 9:15 p.m., she contacted Defendant and told him that she was on her way home. She arrived home at 9:30 p.m. When she got inside, Defendant was sitting on the sofa, watching television and eating. Mrs. Frank-Hicks testified that she got in the bathtub at 10:00 p.m., and she and Defendant went to bed no later than 11:00 p.m. She recounted that at approximately 2:30 a.m., her daughter called and told her the police were looking for her and Defendant. Mrs. Frank-Hicks explained that she heard a knock at the door, and when she opened it, officers were present. She further explained that the police subsequently obtained a search warrant and searched her house and her vehicle. Mrs. Frank-Hicks testified that she told an officer that Defendant told her he had gone to Alex’s Sport’s Bar earlier that day.
Detective Stevens testified in rebuttal that when he went to Defendant’s house, he observed four black males congregated around a Nissan Maxima vehicle, and Defendant was standing right by the vehicle. He further testified that when he informed Defendant that he and the other subjects were to come with him to the Criminal Investigations Division for an interview, Defendant wanted to notify his wife that he was going to be leaving with them. Detective Stevens testified that he believed Defendant knocked on the bedroom door to awaken his wife, and she followed them outside.
At the conclusion of the presentation of evidence at trial, the jury found Defendant guilty as charged. On February 16, 2016, Defendant filed a Motion for New Trial, which was denied on February 22, 2016. Also on February 22, 2016, [¡¡Defendant waived sentencing delays, after which the trial judge sentenced him to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Subsequently, Defendant filed a Motion for Appeal, which was granted. The instant appeal followed.
ASSIGNMENTS OF ERROR
On appeal, Defendant alleges the trial court erred by prohibiting the jury from learning of the victim’s criminal conviction record, which denied him his Sixth Amendment right to present a defense, and 2) it was an error for the prosecutor to personally attack defense counsel in closing argument by suggesting that his defense amounted to a denigration of the value of the life of the victim.
LAW AND ANALYSIS
Victim’s Criminal Record
Defendant argues the trial judge erred by prohibiting him from presenting to the jury reliable evidence of the victim’s felony conviction record, as that evidence was relevant and probative to his defense. Defendant asserts that, since his defense was that he did not kill anyone and this was not a claim of self-defense, it was error to prohibit him from presenting such evidence where the record tended to support the defense that other individuals may have had a motive to kill the victim. He claims that the victim was a convicted felon with a long record of narcotics distribution, a notoriously violent activity, and that, at the time of his death, he was carrying cocaine on his person packaged for retail distribution and was intoxicated on the drug. Defendant contends that the trial judge’s ruling excluding this evidence *463 violated his Sixth Amendment right to present a defense.
The State responds that the trial judge’s ruling in this matter was proper. The State further responds that the victim’s criminal conviction record is inadmissible because there has been neither a claim of self-defense nor a claim of an overt act on the part of the victim.
IfiThe record reflects that Defendant filed a Motion in Limine to Admit Evidence of Victim’s Criminal Convictions. In that motion, Defendant moved the trial court for a pre-trial ruling allowing admissibility of the victim’s criminal convictions, as supplied by the St. John Parish Clerk of Court, and the victim’s rap sheet, which was furnished by the District Attorney’s Office. Defendant asserted in his motion that no motive had been ascribed to Defendant to explain the victim’s killing by him. He stated that the victim was found with cocaine in his blood and urine and with cocaine and other drugs on his person. Defendant also stated that the victim had at least three felony convictions for drug distribution, as well as illegal discharge of a weapon, simple possession of marijuana and paraphernalia, and was scheduled to be in court the day following his death for proceedings in St. John case no. 2012-CR0190 “A,” for “aggravated assault on a police officer.” Defendant noted in his motion that the Sheriffs Office failed to send the drugs found in the victim’s possession to the State Crime Lab until the defense filed a motion for the testing and requested a court hearing on the matter. He contended that he had a fundamental right to present a defense that included the presentation of circumstances that were relevant in the context of this case.
On September 2, 2015, Defendant filed a Memorandum in Support of Defendant’s Motion in Limine to Introduce Victim’s Rap Sheet at Trial. In that memorandum, citing La. C.E. art. 406, Defendant stated that he desired to introduce evidence of the victim’s criminal convictions showing that the victim had a habit and routine practice of conducting narcotics transactions, with the attendant dangers therein. He listed the convictions as follows: (1) St. John Case No. 2000-CR-543, on September 5, 2002, the victim pleaded guilty to possession of cocaine; (2) in St. John Case No. 1997-CR-153, on November 3, 1997, the victim pleaded guilty to distribution of cocaine; (3) in St. John Case No. 1996-CR-483, the victim pleaded guilty to illegal discharge of a weapon; (4) in St. John Case |7No. 2001-CR-555, the victim pleaded guilty to possession of marijuana and possession of paraphernalia; and (5) in St. John Case No. 2005-CRr-452, the victim pleaded guilty to possession with intent to distribute cocaine. Defendant notes that this list of convictions was taken from the St. John Clerk of Court’s database and did not include any convictions that might have occurred outside St. John Parish.
In that memorandum, Defendant also asserted that the State’s principal witness, Dontae Bond, had several convictions involving crimes of violence by firearm and that the persons accompanying Mr. Bond on the night of the murder, “Snowman” and “Clickem,” each had several drug violation convictions. Defendant maintained that the purpose for the introduction of the victim’s criminal convictions was to bolster his defense that the victim’s habitual and routine criminal behavior involving illegal drug transactions created a situation where a jury could find the victim had many enemies. He further maintained that, in the absence of a motive, forensic evidence, or eyewitness testimony, presentation of such evidence was relevant to establish reasonable doubt that Defendant was the aggressor. Defendant noted that he had no interest in establishing the vie- *464 tim’s bad character but rather the life the victim had chosen to live was a circumstance Defendant should have been allowed to exhibit to the jury.
The State filed a Memorandum in Opposition of Defendant’s Motion in Limine to Introduce Victim’s Rap Sheet at Trial on September 25, 2015. In its memorandum, the State argued that the victim’s alleged lifestyle of drug distribution, use, and abuse and weapons could easily be viewed by a jury as dangerous character that should not be admissible at trial. The State further argued that there is no indication of a hostile demonstration or overt act by the victim at the time of the offense. As such, the State contended that under La. C.E. art. 404(A)(2), such evidence was inadmissible.
On September 29, 2015, the trial judge issued a written judgment with |8Reasons ruling that the victim’s criminal record was inadmissible. The trial judge stated in pertinent part:
In the instant case, the victim’s criminal record is not relevant because Defendant is not claiming self-defense nor has an “overt act” by the victim been alleged. Defendant has not laid a foundation supporting any relevance of such character evidence. There was no showing made that Defendant was aware of the victim’s criminal record. Moreover, the victim’s criminal record, as alleged by Defendant, does not include any prior specific incidents of aggression conducted by the victim, but rather it specifies only acts of conducting narcotics transactions. Accordingly, evidence of the victim’s criminal record offered for the purpose of explaining defendant’s state of mind should be excluded, as the victim’s alleged drug habit is not relevant to prove a violent habit existed that was a routine practice or to defend Defendant’s case. LSA C.E. art. 406. Comment (b) of La. C.E. art. 406 provides that this code article is included in order to distinguish treatment of habit and routine evidence from that of character evidence, which generally is inadmissible. Therefore, the victim’s criminal record is not admissible.
The trial judge concluded:
Defendant bears the burden of laying a foundation to support the relevance of such character evidence .to prove why disclosure of the victim’s criminal record is necessary, and this Court finds that he failed to meet his burden. After considering Defendant’s motion and balancing the competing interests, this Court concludes that Defendant’s need for disclosure of the victim’s criminal record and its admissibility at trial is not essential to a fair trial.
After he was convicted, Defendant filed a motion for new trial, arguing inter alia, that the trial judge erred by denying his motion to admit the victim’s rap sheet. Defendant contended that had the victim’s criminal history been admitted, the jury may well have considered that the shooting involved a drug deal gone bad, and the jury might have been swayed by the fact that Mr. Lewis had seven convictions for possession of cocaine, among other things. In his motion, Defendant asserted that La. C.E. art. 406 allowed evidence which is relevant to prove that the conduct of a person on a particular occasion was in conformity with habit or routine practice. Defendant further asserted that his effort to identify the habit or routine practice by way of presentation of a long criminal history of convictions should have been granted.
In At the hearing on the motion, Defendant made arguments similar to those he made in his written motion for new trial, including arguments regarding the trial judge’s denial of his request for admission *465 of the victim’s criminal convictions. The prosecutor responded that there was a pre-trial motion regarding the motion to admit the victim’s rap sheet, that the trial judge had denied it, and that he did not think Defendant sought review of that ruling. The trial judge subsequently denied the motion for new trial, stating in pertinent part:
The victim’s rap sheet, of course, is a little bit more of a, of a, I think, a fuzzy area but I don’t think that there is a, in my own mind, there’s a rational connection between the fact that he may have been in possession of drugs and had a history of possession of drugs and had a history of possession of drugs and possession of weapons—there was no claim of self-defense in this trial. So even if he had a reputation for having been armed in the past, I don’t know what, what that would have tended to show in the, in the trial because there was no issue of self-defense. Plus to be able to use it they would have had to, as I appreciate it, have had to been some display of an overt action on his step before, I mean on his part before that even could have been introduced under the Code of Evidence Article 404 A, I think it was. But I don’t see the connection between the mere certainly possession of drugs, which he was clearly, the evidence revealed had drugs on his person, as well as in his system. The jury, it if were so inclined, could have inferred something about his character from that. I don’t know how it could make the leap to infer that that somehow justified or mitigated a homicide.
Again, even the mere fact that he had a reputation or, I’m sorry, not a reputation, but a record, I guess, from one, from which one could have assumed a reputation for possession, possessing weapons, I don’t see how that could lead them to conclude that that justified a, or excused a homicide in the facts of this case. There’s,' there’s no evidence that there was, in fact, a gun or a weapon on, firearm on his person, so.
Both the Sixth Amendment of the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee a criminal defendant the right to present a defense. State v. Lirette, 11-1167 (La. App. 5 Cir. 6/28/12); 102 So.3d 801, 813, writ denied, 12-1694 (La. 2/22/13); 108 So.3d 763. This right does not require a trial court to permit the introduction of evidence that is inadmissible, irrelevant, or has so little probative value that it is substantially outweighed by|inother legitimate considerations in the administration of justice. Id. The trial court is accorded great discretion in evidentiary rulings and, absent a clear abuse of that discretion, rulings regarding the relevancy and admissibility of evidence will not be disturbed on appeal. State v. Sandoval, 02-230 (La. App. 5 Cir. 2/25/03); 841 So.2d 977, 985, writ denied, 03-853 (La. 10/3/03); 855 So.2d 308.
La. C.E. art. 404(A)(2) governs admissibility of character evidence of a victim and states, in pertinent part:
(2) Character of victim, (a) Except as provided in Article 412,[4] evidence of a pertinent trait of character, such as a moral quality, of the victim of the crime offered by an accused, or by the prosecution to rebut the character evidence; provided that in the absence of evidence •of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of his dangerous character is not admissible, [footnote added].
*466 In State v. Brown, 46,669 (La. App. 2 Cir. 2/29/12); 86 So.3d 726, writs denied, 12-0724 (La. 9/14/12); 97 So.3d 1016 and 14-0321 (La. 10/24/14); 161 So.3d 693, the defendant argued that the trial court erred by prohibiting him from presenting a full defense. He contended that critical to his defense was his ability to prove, through pertinent character traits of the victim and the victim’s criminal record, that other people had a motive to kill the victim. The appellate court found that a review of the record indicated that the trial court ruled that the defendant could not admit evidence concerning the criminal history of the victim unless he first laid a foundation supporting the relevance of such character evidence. The appellate court further found that the trial court did not prevent the defendant from presenting a defense, because the defendant failed to lay a foundation sufficient to support the admission of the victim’s criminal record. Id., 86 So.3d at 734-35.
In State v. Keating, 00-51 (La. App. 5 Cir. 10/18/00); 772 So.2d 740, writ denied, 00-3150 (La. 10/12/01); 799 So.2d 494, the defendant contended that the trial court violated his right to fully present a defense when it refused to allow him |nto put on evidence of the victim’s criminal convictions. This Court found that there was no evidence produced that the victim made a hostile demonstration or committed an overt act against the defendant at the time of the incident. Thus, this Court found that the trial court did not err in refusing to allow evidence of the victim’s prior convictions, citing La. C.E. art. 404(A)(2)(a). This Court further found that even assuming that the trial judge erred by excluding such evidence, the defendant was not prejudiced by the ruling since the jury heard testimony regarding the victim’s violent propensities as well as his criminal record. Id., 772 So.2d at 746-47.
In State v. Young, 99-1054 (La. App. 5 Cir. 2/16/00); 757 So.2d 797, the defendant argued that the trial court erred by not allowing him to introduce evidence of the character of Willie Henderson, a friend of the victim who was present at the time of the offense, particularly his propensity for violent behavior, pursuant to La. C.E. art. 404(A)(2). This Court found that a violation of the statute in question did not create a specific victim, but that even if Mr. Henderson was considered a victim for purposes of Article 404, the requirements for admission of character evidence under that article were not met. This Court stated that the testimony indicated that it was the defendant who committed the initial hostile act. It asserted that the trial court did not err in excluding the character evidence and that the defendant was not prejudiced by the ruling. This Court noted that the defendant testified that Mr. Henderson had been involved in several shootings and armed robberies and that Mr. Henderson had a gun with him every time he saw him. This Court found that the jury heard the defendant’s testimony and apparently rejected it. Id.,Id., 757 So.2d at 800-01.
In the instant case, as in Brown, Keat-ing, and Young, there was no evidence admitted at trial showing that the victim made a hostile demonstration or committed an overt act against Defendant at the time of the incident pursuant to | iaLa. C.E. art. 404(A)(2)(a). Defendant did not argue self-defense at trial; thus, evidence of the victim’s prior convictions was not relevant. Even assuming the trial judge erred in excluding the evidence in question, we find that Defendant was not prejudiced by the ruling. Although the trial judge did not allow court records of the victim’s convictions, the jury heard testimony that the victim had cocaine in his system and narcotics packaged in three plastic bags on his person at the time of his death. Also, even if evidence of the victim’s criminal convic *467 tions had been admitted into evidence, we find that it would not have made much difference, since there were two eyewitnesses who indicated at trial that Defendant shot the victim.
Therefore, we find that the trial judge did not err by refusing to allow evidence of the victim’s prior convictions.
Personal Attacks against Defense Counsel
Defendant argues that it was error for the prosecutor in closing argument to personally attack defense counsel by suggesting that his defense amounted to a denigration of the value of the life of the victim. First, he contends that the prosecutor’s claim was made in closing argument and was thus not in response to anything defense counsel said in argument. Second, Defendant asserts that the coroner testified to the presence of cocaine in the system of the victim in response to direct examination by the prosecutor. Third, he argues that the prosecutor cynically and falsely suggested that the victim was a mere casual user of cocaine when the prosecutor knew that the victim had done more than “make a mistake” but rather was a career offender with multiple cocaine distribution convictions on his record, a record that the prosecutor refused to let the jury see. As such, Defendant contends that the prosecutor’s argument was so improper as to warrant reversal.
The State responds that the prosecutor’s statements do not warrant a reversal of the trial court’s ruling. It further responds that the prosecutor’s comments were 1 ^merely a retort to defense counsel’s “crafty” method of suggesting that the victim engaged in long-term cocaine use. The State notes that the trial court properly addressed the prosecutor’s comments before the jury when the objection was raised by stating that he had already told the jury that it was their memory of what the testimony and the facts were that controlled. Lastly, the State asserts that Defendant has offered no jurisprudence to suggest that such comments constitute reversible error.
During closing argument, the prosecutor stated:
The defense has somehow tried to diminish him by suggesting, because he might have had some chemicals in his system, that somehow his life—
Defense counsel then objected to the photo of the victim with his daughter remaining on the screen. The objection was overruled.
The prosecutor continued, stating:
The defense subtly tried to, to suggest that maybe his life wasn’t worth so much or he’s dispensable because he had a substance in his system. Well, that’s not an element and it certainly is not appropriate to bring up, to suggest that somehow his life was less valuable. We all know people who make mistakes and that doesn’t mean that they should be murdered,
Defense counsel objected, stating that he never suggested or implied in any way that the victim’s life was not equally valuable to that of every other person. The prosecutor replied that this was closing argument. The trial judge told defense counsel that he had the right to respond, that this was argument, and that he had already told the jury “it’s their memory of what the testimony and the facts are that controls.” The trial judge then told the prosecutor to proceed.
The prosecutor subsequently stated in pertinent part:
As I, as I was saying, we all know people who have made mistakes but their lives are just as valuable. They’re family members, they’re friends, they’re people we know, and nobody’s lives *468 should be taken for no reason, and that’s what happened in this case.
After he was convicted, Defendant filed a motion for new trial arguing, |14mter alia, that the trial judge erred by overruling defense counsel’s objection to the prosecutor’s personal attack on defense counsel. Defendant claimed that the prosecutor contended that defense counsel fashioned his defense on a theory that the victim’s life had no value because the victim was found possessing drugs. Defendant argued that his counsel never suggested this and that it was an ad hominem attack on his character calculated to prejudice the jury against the defense.
At the hearing on the motion, Defendant made arguments similar to those made in his written motion for new trial, including arguments regarding the prosecutor’s characterization of his defense as a character attack on the victim. The prosecutor responded that it was only argument and that he thought it prudent to. address the issue of drugs before the jury. He added that the jury was instructed that it was just argument and not facts and that it did not prejudice anyone. After hearing arguments of counsel, the trial judge denied the motion for new trial, stating in pertinent part:
The argument to the jury, while I understand and I recall counsel’s indignation about that, I do believe that that is certainly a tempest in a teapot. The jury was instructed that what, what counsel said was their contentions, it was not evidence, and I, I just don’t think that it, it was as important as the significance that Mr. Goza puts on. it.
The scope of argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the State or defendant may draw therefrom, and to the law applicable to the case. La. C.Cr.P. art. 774. The argument shall not appeal to prejudice. Id. The State’s rebuttal shall be confined to answering the defendant’s argument. Id. However, a prosecutor retains “considerable latitude” when making closing arguments. State v. Taylor, 93-2201 (La. 2/28/96); 669 So.2d 364, 374, cert. denied, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996). Further, the trial judge has broad discretion in controlling the scope of closing arguments. State v. Greenup, 12-881 (La.App. 5 Cir. 8/27/13); 123 So.3d 768, 775, writ denied, 13-2300 (La. 3/21/14); 135 So.3d 617.
Nevertheless, even if the State’s argument was improper, a conviction or sentence will not be reversed for improper closing argument unless the court is thoroughly convinced the remarks influenced the jury and contributed to. the verdict. Taylor, 93-2201; 669 So.2d at 375. The Louisiana Supreme Court has recognized that “much credit should be accorded to the good sense and fairmindedness of jurors who have seen the evidence and heard the argument, and have been instructed repeatedly by the trial judge that arguments of counsel are not evidence.” State v. Mitchell, 94-2078 (La. 5/21/96); 674 So.2d 250, 258, cert. denied, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 538 (1996).
In the instant case, the record reflects that during the direct examination of the coroner, Dr. Huber, the prosecution elicited testimony that the toxicology report showed cocaine in the victim’s system. On cross-examination, defense counsel said that he had the impression that the cocaine metabolites found in the blood, urine, and fluid behind the eyes meant that the victim was engaged in both short and long-term use of that.drug. Dr. Huber testified that it was possible that the victim could have had some long-term use, but that the presence of cocaine metabolites in those areas did not necessarily mean there was long-term use. Also on cross-examination, de *469 fense counsel elicited testimony from Dr. Huber indicating that the victim had cocaine on his person at the time of his death. Dr. Huber testified that the coroner’s office wrote in the report that the sheriffs office had “coke” in evidence.
Additionally, during the cross-examination of Detective Pugh, defense counsel elicited testimony from him that State’s Exhibit 6 was the contents of the victim’s pocket. During cross-examination, Detective Pugh identified a Louisiana State Police Crime Laboratory evidence submittal form and testified that “E-6” was “a sealed evidence envelope with a clear plastic bag containing three clear |inplastic bags containing one white powder, second bag containing one white powder and the third containing a white pill.” Detective Pugh stated that it was sent to the State Police Crime Lab for a drug analysis but that he was not furnished any results.
After reviewing the foregoing testimony, we find that the trial judge properly addressed the prosecutor’s comments. The prosecutor was simply pointing out that the victim’s life had value, even if he was an illegal drug user. Additionally, the trial judge gave the jury the preliminary instructions that what the lawyers said in their closing arguments was not evidence. Further, during the jury instructions, the trial judge told the jury that they must decide the facts from the testimony and other evidence and then apply the law to those facts in reaching their verdict. The trial judge explained to the jury again that the closing arguments were not evidence.
Therefore, we do not find that the trial judge abused his discretion by effectively overruling defense counsel’s objections to the prosecutor’s closing argument comments.
Errors Patent Review
The record was reviewed for errors patent, according to La. C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La. 1975), and State v. Weiland, 556 So.2d 175 (La. App. 5th Cir. 1990). The review reveals errors patent in this case.
Post-Conviction Relief Advisal
The trial judge failed to properly notify Defendant of the two-year prescriptive period for filing an application for post-conviction relief, as required by La. C.Cr.P. art. 930.8(C). The transcript reflects that the trial judge advised Defendant that he had the right to file an application for post-conviction l-elief within two years of the time when his conviction became final.
This Court has held that the failure to advise a Defendant that the 117prescriptive period runs from the time his conviction and sentence become final is incomplete. State v. Grant, 04-341 (La. App. 5 Cir. 10/26/04); 887 So.2d 596, 598. As such, by means of this opinion, we correct that error and inform Defendant that “no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of [La. C.Cr.P.] Article 914 or 922.” See State v. Drewery, 12-236 (La. App. 5 Cir. 1/20/13); 108 So.3d 1246, 1257.
Commitment
The State of Louisiana Uniform Commitment Order improperly reflects that Defendant was convicted of second degree murder in violation of La. R.S. 40:30.1. The correct statutory citation is La. R.S. 14:30.1. Also, the uniform commitment order improperly reflects that Defendant pleaded guilty when the record clearly shows that Defendant was convicted by a jury. As such, we remand this matter and order that the uniform commitment order be corrected to reflect the proper statutory citation and to reflect that Defendant *470 was convicted by a jury. Furthermore, we direct the Clerk of Court for the 40th Judicial District Court to transmit the original of the corrected uniform commitment order to the officer in charge of the institution to which Defendant has been sentenced and the Department of Corrections’ legal department. See State v. Long, 12-184 (La. App. 5 Cir. 12/11/12); 106 So.3d 1136, 1142 (citing La. C.Cr.P. art. 892(B)(2)).
DECREE
For the foregoing reasons, Kenneth E. Hicks, Ill’s conviction and sentence are affirmed. The matter is remanded to the trial court for correction of the Louisiana Uniform Commitment Order.
AFFIRMED; REMANDED FOR CORRECTION OF UNIFORM COMMITMENT ORDER

. Amanda Roh, a former employee of the St. John Parish Sheriff’s Office, testified that Alex’s Sports Bar was located at 119 East 24th Street in Reserve, Louisiana.

. Ms. Roh testified that the victim’s name was Anthony Young.

. Dr. Huber testified that the coroner’s office wrote in the report that the Sheriffs Office had "coke” in evidence. Detective Pugh identified the contents of the victim’s pocket. He also identified “a sealed evidence envelope with a clear plastic bag containing three clear plastic bags containing one white powder, second bag containing one white powder and the third containing a white pill." Detective Pugh stated that it was sent to the Louisiana State Police Crime Lab for a drug analysis, but he was not furnished any results from that analysis.

. La. C.E. Article 412 is not applicable to the instant case.